**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**SHAWN NORTHRUP**
Plaintiff-Appellee

v.

**CITY OF TOLEDO POLICE DIVISION,** *et al.*
Defendant-Appellants

**On Appeal from the United States District Court**
**For the Northern District of Ohio,**
**Western Division**

**BRIEF OF DEFENDANT-APPELLANTS**
**OFFICER DAVID BRIGHT AND SERGEANT DANIEL RAY**

Daniel T. Ellis, Esq.
(0038555)
Lydy & Moan, Ltd.
4930 N. Holland-Sylvania Rd.
Sylvania, Ohio 43560
Telephone: (419) 882-7100
Fax: (419) 882-7201
Fax: (419) 882-7201

*Counsel for Appelle*

Adam W. Loukx, Director of Law
(0062158)
John T. Madigan, Senior Attorney
(0023614)
City of Toledo Department of Law
One Government Center, Suite 2250
Toledo, Ohio 43604
Telephone: (419) 245-1020
Fax: (419) 245-1090
john.madigan@toledo.oh.gov

*Counsel for Appellants*

# I. **TABLE OF CONTENTS**

I.      TABLE OF CONTENTS………………………………………  **i**

II.     TABLE OF AUTHORITIES…………………………………..  **iii**

III.    JURISDICTIONAL STATEMENT……………………………  **1**

IV.     STATEMENT OF ISSUES PRESENTED FOR REVIEW…………  **2**

V.      STATEMENT OF THE CASE…………………………………  **2**

VI.     STATEMENT OF THE FACTS…………………………………  **3**

VII.    SUMMARY OF ARGUMENT…………………………………  **9**

VIII    LAW AND  ARGUMENT……………………………………  **11**

IX.     CONCLUSION…………………………..………………….  **29**

X.      CERTIFICATE OF COMPLIANCE…………………………  **29**

XI.     CERTIFICATE OF SERVICE…………………………………  **30**

      1. THE OFFICERS HAD A LAWFUL RIGHT TO DETAIN AND SECURE
PLAINTIFFS TO PERFORM AN INVESTIGATORY STOP UNDER THE
FOURTH AMENDMENT…………………………………………… **12**

      2. THE OFFICERS HAD REASONABLE SUSPICION TO STOP AND
DETAIN THE PLAINTIFF TO CONDUCT AN INVESTIGATION UNDER THE
DOCTRINE ESTABLISHED BY *TERRY V.*
*OHIO*………………………………………………………………… **15**

      3.  THE NATURE OF THE INVESTIGATORY STOP WAS LIMITED IN
SCOPE AND DURATION TO ACCOMPLISHING THE BASIS OF THE
STOP……………………….........................................................  **17**

      4.  THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY…. **18**

5.  OFFICER DAVID BRIGHT AND SERGEANT DANIEL RAY WERE
ENTITLED TO GOVERNMENTAL IMMUNITY PROTECTION UNDER THE
LAWS OF THE STATE OF OHIO FOR PLAINTIFF'S CLAIMS OF ASSAULT,
BATTERY, FALSE ARREST AND MALICIOUS
PROSECUTION...................................................................... **24**

## II.  <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp. 2d 928, 930 (S.D. Ohio 1999)……………………………………….. **12**

*Alley v. Bettencourt*, 134 Ohio App.3d 303 (1999) ………………………… **28**

*Anderson v. Liberty Lobby,Inc.*,477 U.S. 242, 106 S.Ct.2505, 91 L.Ed.2d 202(1986) …………………………………………………………… **11**

*Anderson v. Massillon*, 134 Ohio St.3d 380, 983 N.E.2d 266 (2012) ……… **25**

*Baker v. Schwarb*, No. 14-10784, 2014 WL 4111375 (E.D. Michigan. Aug.. 19, 2014) ……………………………………………………………**13,14**

*Banks v. Gallagher* 3:08-cv-1110,2011WL718632,(M.D.Pa.Feb.22, 2011) …. **14**

*Blake v. Wright*, 179 F.3d 1003 (6th Cir.1999) ………………………………… **19**

*Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct.596, 160 L.Ed.2d 583 (2004) … **20**

*Burchett v. Kiefer*, 310 F.3d 937 (6th Cir.2002) ………………………………… **21**

*Butcher v. City of Cuyahoga Falls*, N.D. Ohio, No.5:11-cv-939, 2011 WL 5971043, (Nov.28, 2011) …………………………………………………… **15**

*Campbell v. Stamper*, 244 Fed.Appx.629, 2007 WL 1958629 (6th Cir.2007) … **15**

*Celotex Corp. v. Catrett*, 477 U.S.317, 106 S.Ct.2548, 91 L.Ed.2d. 265 (1986) ………………………………………………………………… **11**

*Ciminillo v. Streicher*, 434 F.3d 461 (6th Cir.2006) ………………………… **20**

*Cook v. Cincinnati*, 103 Ohio App.3d 80, 90 (1995) ………………………… **24**

*Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) …………………… **11**

*Crawford v. Geiger*,996 F.Supp.2d 603 (N.D.Ohio,2014) ................... **19,24**

*Criss v. Springfield Twp* , 56 Ohio St.3d 82, 84, 564 N.E.2d 440 (1990) ........... **28**

*Evans v. Smith*, 97 Ohio App.3d 59, 70, 646 N.E.2d 217 (1994) .............. **27**

*Feliciano v. Kreiger* , 50 Ohio St.2d 69, 362 N.E.2d 646 (1977) ...................... **27**

*Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) ................................. **13**

*Garrison v. Bobbitt*, 134 Ohio App.3d 373, 384 (1999) ......................... **26**

*Gold v. City of Miami*, 121 F.3d 1442 (11th Cir.,1997) ........................ **22**

*Graham v. Connor*, 490 U.S. 386,109 S. Ct. 1865,104 Led.2d 443 (1989) ... **13**

*Harlow v. Fitzgerald*, 475 U.S. 800, 102 S.Ct.2727, 73 L.Ed.2d 396 (1982) .... **18**

*Hicks v. Leffler*, 119 Ohio App.3d 424 (1997) ................................. **26**

*Hodges v. Meijer, Inc.*, 129 Ohio App.3d 318 (1998) ........................... **26**

*Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809(6th Cir.1999)
.................................................................................. **17,18**

*Hunter v. Bryant*, 502 U.S.224, 112 S.Ct.534, 116 L.Ed.2d 589 (1991) ...... **19**

*Johnson v. Godsey*,2[nd] Dist.App.No.2012CA8o,2013-Ohio-3277 ............ **24,25**

*Love v. City of Port Clinton*, 37 Ohio St.3d 98, 99 (1988) ................... **27**

*Meadows v. Thomas*, 117 Fed.Appx.397 (6th Cir.,2004) ....................... **22**

*Melonowski v. Judy*, 102 Ohio St. 153, 131 N.E. 360 (1921) ................. **28**

*O'Malley v. City of Flint*, 652 F.3d 662 (6ht Cir.,2010) ....................... **20,22**

*Rankin v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 118 Ohio St.3d 382,
889 N.E.2d 521(2008) ...........................……................................ **25**

*Saucier v. Katz*, 533 U.S. 194, 121 S.Ct.2151, 150 L.Ed.2d 272 (2001) ...... **19**

*Schubert v. City of Springfield*, 589 F.3d 496 (1st Cir.2009) .................... **15**

*Smith v. John Deere Co.*, 83 Ohio App. 3d 398, 406 (1993) .................... **27**

*Smith v. Wade,* 461 U.S. 30, 35–36, 103 S.Ct. 1625, 1629, 75 L.Ed.2d 632 (1983)
................................................................................................ **23**

*Terry v. Ohio*, 392 U.S.1, 88 S.Ct.1868, 20 L.Ed.2d 889 (1986) ......... **2, 15,16,20**

*Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705 (1990) ........... **25**

*United States v. Bradshaw*, 102 F.3d 204 (6th Cir.,1996) ....................... **17**

*United States v. Brown*, 51 F.3d 131 (8th Cir. 1995)............................. **13**

*United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006) ................. **12**

*United States v. Cortez*, 449 U.S. 411, 101 S.Ct.690, 66 L.Ed.2d 345 (1981) ... **13**

*United States v. Davis*, 430 F.3d 345 (6th Cir.,2005) ............................ **17**

*United States v. Garza*, 10 F.3d 1241 (6th Cir.,1996) ............................. **17**

*United States. v. McDaniel*, 550 F. 2d 214 (5th Cir. 1977) .................... **12**

*United States v. Monhollen*, 145 F.3d 1334 (6th Cir. 1998) .................... **13**

*United States. v. Osborne*, 630 F.2d 374 (5th Cir. 1980) ....................... **12**

*United States v. Ubiles*, 224 F.3d 213 (3d Cir.2000) ............................ **15**

*United States v. Walker*, 51 F.3d 274 (6th Cir. 1995) cert denied, 515 U.S. 1150,
115 S. Ct. 2594 (1995) ........................................................ **13**

*Williams v. Mehra*, 186 F.3d 685 (6th Cir.,1999) (en banc) .................... **20**

*White v. Burlington Northern & Santa Fe Railroad Co.,* 364 F.3d 789, 806 (6th
Cir.2004), *aff'd,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)............**23**

## STATUTES

42 U.S.C.§ 1983……………………………………………… **10,14,23,24**

42 U.S.C.§ 1985 …………………………………………… **10**

Ohio Revised Code § 2744.03…………………………………… **24**

Ohio Revised Code § 2917.31 ……………………………….. **5, 8**

Ohio Revised Code § 2921.29………………………………… **6, 8**

Ohio Revised Code § 2923.13 ………………………………… **5, 7**

### III. JURISDICTIONAL STATEMENT

This federal question case arises from an action filed on June 15, 2012 by Shawn Northrup (R.1, Complaint) against the City of Toledo Police Division, Officer David Bright, Sergeant Daniel Ray and Officer Donald Comes in the United States District Court, Northern District of Ohio, Western Division.

On September 30, 2014 the District Court granted partial summary judgment for the City of Toledo and Officer Donald Comes dismissing the Plaintiff's claims under the First Amendment, right to symbolic speech, the Second Amendment right to bear arms claims under the United States and Ohio constitutions, and the Fourth Amendment claims, state law claims and punitive damages claims against the City of Toledo Police Division.

The District Court denied the Defendants' motion as to the Plaintiff's claims against Officer David Bright and Sergeant Daniel Ray for violation of the Plaintiff's Fourth Amendment rights, for assault, battery, wrongful arrest and malicious prosecution under Ohio law and for Plaintiff's punitive damages claims against Officer Bright and Sergeant Ray. Memorandum Opinion and Order, R.45

The District Court's order became final and appealable on September 30, 2014. Officer Bright and Sergeant Ray filed their Notice of Appeal under Fed.R.App.Proc.3 on October 24, 2014. R. 49, Notice of Appeal.

## IV. **STATEMENT OF ISSUES PRESENTED FOR REVIEW**

**Issue 1.**  The District Court erred in holding that Officer David Bright and Sergeant Daniel Ray lacked probable cause to conduct an investigatory search and seizure of the Plaintiff.

**Issue 2.**  The District Court erred in holding that Officer David Bright and Sergeant Daniel Ray lacked a reasonable suspicion of criminal activity to support a *Terry v. Ohio* search and seizure of the Plaintiff.

**Issue 3.**  The District Court erred in holding that Officer David Bright and Sergeant Daniel Ray were not entitled to qualified immunity as to Plaintiff's Fourth Amendment claims of unlawful search and seizure.

**Issue 4.**  The District Court erred in finding that Officer David Bright and Sergeant Daniel Ray were not entitled to governmental immunity protection under the laws of the State of Ohio for Plaintiff's claims of assault, battery, false arrest and malicious prosecution.

**Issue 5.**  The District Court erred in finding that a genuine issue of material fact existed regarding the Plaintiff's claims for punitive damages.

## V. **STATEMENT OF THE CASE**

On June 15, 2012, Shawn Northrup filed a complaint against the City of Toledo Police Division, Officer David D. Bright, Officer Donald Comes and Sergeant Daniel Ray in the United States District Court, Northern District of Ohio,

Western Division alleging the officers and the Toledo Police Division violated his rights under the United States and Ohio Constitutions of freedom of speech, the right to bear arms, the right against unlawful searches and seizures. The complaint also alleged that the officers and the police division were liable to the Plaintiff for acts of assault, battery, false arrest, malicious prosecution and punitive damages.

On January 29, 2014 Defendants filed a motion for summary judgment. R.24. On September 30, 2014 the District Court issued an order granting the Defendants' motion in part and denying it in part. Left standing by the Court's order were the Plaintiff's Fourth Amendment claims under the United States Constitution, his punitive damages claims and his state law claims for assault, battery, false arrest, and malicious prosecution against Officer Bright and Sergeant Ray. R.45

## VI. <u>STATEMENT OF THE FACTS</u>

At 5:10 P.M. on the afternoon of June 16, 2010 the City of Toledo Police Department received a 9-1-1 emergency telephone call from a caller who identified himself as Allen Rose. He reported that a white male walking his dog on Rochelle Rd. was carrying a hand gun out in the open.(Bright Depo.R.26, Exhibit"1"). The man walking on Rochelle Rd was further described as 6'4" in height with a long ponytail and wearing tan pants.(Bright Depo,R.26.,p.33). Officer David Bright was dispatched to the scene and began searching the area. At 5:22 P.M., he observed the Plaintiff who matched the description given walking on Hayes Street

along with his wife, two children and a dog. As he drove closer, Officer Bright observed the Plaintiff wearing a semi-automatic pistol on his hip in a holster and a T-shirt which read "This is the shirt I wear when I don't care". (Bright Depo.R.26,p.37)(Northrup Depo, R.28, p.7). As Officer Bright approached he noticed that the Plaintiff was holding a dog leash. Officer Bright asked Mr. Northrup to hand the leash to his wife which he did. The Plaintiff, who was then standing at a right angle to Officer Bright, then moved his hands in the direction of his gun and a cellular telephone he was also carrying. The officers ordered Mr. Northrup to hand over his cell phone to his wife which order the Plaintiff initially refused to obey. After several requests to hand over the phone he finally did so. At this point, Officer Bright, after observing what he believed to be furtive movements made by Mr. Northrup ordered the Plaintiff to turn around so that the officer could disarm him.(Bright Depo.R.26,p.54,). This request, like the preceding one to hand over the cell phone, was repeated several times before the Plaintiff obeyed.(Bright Depo.R.26, p.38). Finally, Officer Bright was able to secure the Plaintiff's weapon. At this point, the officer had not spoken with the original 9-1-1 caller so he proceeded to question Mr. Northrup regarding the incident. Mr. Northrup then began to explain to the officer that he had been in a verbal exchange with the person who called the police. This discussion included vulgarities and an argument over the open carrying of a firearm. Officer Bright

believed that this confrontation might have resulted in an offense of inducing panic. (Bright Depo.R.26,p.40). The officer next asked the Plaintiff for his drivers license to confirm his identification. This request, like the preceding ones, had to be repeated three times before the Plaintiff complied.(Bright Depo.R.26, pp.48-49). Officer Bright then asked Mr. Northrup for his concealed weapon carry permit (CCW). The officer's purpose for making this request was to quickly confirm that the Plaintiff was not prohibited from possessing a firearm under Ohio Revised Code § 2923.13 (Having Weapons While Under A Disability) since a criminal background record check is required to obtain such a permit.(Bright Depo.R.26,p.49). When the Plaintiff refused to answer any more of the officer's questions, Officer Bright placed handcuffs on Mr. Northrup and seated him in the rear of his patrol car.(Bright Depo.R.26, p.61). The Plaintiff complained that the handcuffs were too tight and Officer Bright immediately loosened them (Bright Depo.R.26,p.51).

After the Plaintiff was placed in the rear of Officer Bright's car, Sergeant Daniel Ray, Officer Bright's supervisor, arrived on the scene at 5:26 P.M.. (Ray Depo.R.29, p.19) .Officer Bright initially intended to charge the Plaintiff with the offense of Inducing Panic, Ohio Revised Code § 2917.31 1 but Sergeant Ray decided to contact the Toledo Police Detective Bureau to insure that the proper charge was filed. Sergeant Ray explained to Detective Phil Wauford everything

that had occurred. Detective Wauford advised Sergeant Ray that Mr. Northrup should be charged with Failure to Disclose Personal Information, Ohio Revised Code § 2921.29.3., a misdemeanor of the fourth degree. Officer Bright then removed the handcuffs from the Plaintiff, returned his firearm to him and issued him a citation for Failure to Disclose Personal Information. At 5:58 P.M. Officer Bright left the scene to return to the Scott Park district police station.(Bright Depo.R.26, p.75).

Officer Donald Comes, the third Toledo Police officer named in the complaint, had no direct contact with the Plaintiff. His only involvement was to interview the 9-1-1 caller, Allen Rose and report to Officer Bright what had occurred between Mr. Rose and the Plaintiff (Bright Depo.R.26,p.67). The criminal charge of Failure to Disclose Personal Information was subsequently dismissed at the request of Daniel Pilrose, an assistant City of Toledo prosecutor.(Bright Depo,.R.26,p.91).

Prior to the events of June 16, 2010, the Plaintiff had been involved in two previous confrontations with police officers over his practice of openly carrying a handgun wherever he went. In 2008 Shawn Northrup was arrested and charged with Carrying a Concealed Weapon in the Village of Ottawa Hills, Ohio. That charged was eventually reduced to Disorderly Conduct, a minor misdemeanor and the Plaintiff pled "no contest" to it.(Northrup Depo. R.28, p.12). Also in 2008,

the Plaintiff was again wearing his handgun while pulling weeds in his front yard. Although, shirt covered the weapon, it was visible from the street. A Toledo Police officer asked Shawn Northrup for his concealed carry permit and removed his weapon. Northrup was grabbed, frisked and physically placed in the back of a police car while his personal information was verified.(Northrup Depo.,R.28, pp.17-21). After those incidents, the Plaintiff began to carry his handgun on every walk through his neighborhood. (Northrup Depo.R.28, p.10). After June 16, 2010 he discontinued these armed strolls.(Northrup Depo.R.28, p.44)

1.2923.13 Having weapons while under disability.

(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

(1) The person is a fugitive from justice.

(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

(4) The person is drug dependent, in danger of drug dependence, or a chronic alcoholic.

(5) The person is under adjudication of mental incompetence, has been adjudicated as a mental defective, has been committed to a mental institution, has been found by a court to be a mentally ill person subject to hospitalization by court order, or is an involuntary patient other than one who is a patient only for purposes of observation. As used in this division, "mentally ill person subject to hospitalization by court order" and "patient" have the same meanings as in section 5122.01 of the Revised Code.

2. 2917.31 Inducing panic.

(A) No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by doing any of the following:

(1) Initiating or circulating a report or warning of an alleged or impending fire, explosion, crime, or other catastrophe, knowing that such report or warning is false;

(2) Threatening to commit any offense of violence;

(3) Committing any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm.

(B) Division (A)(1) of this section does not apply to any person conducting an authorized fire or emergency drill.

(C)

(1) Whoever violates this section is guilty of inducing panic.

(2) Except as otherwise provided in division (C)(3), (4), (5), (6), (7), or (8) of this section, inducing panic is a misdemeanor of the first degree.

3. 2921.29 Failure to disclose personal information.

(A) No person who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects either of the following:

(1) The person is committing, has committed, or is about to commit a criminal offense.

(2) The person witnessed any of the following:

(a) An offense of violence that would constitute a felony under the laws of this state;

(b) A felony offense that causes or results in, or creates a substantial risk of, serious physical harm to another person or to property;

(c) Any attempt or conspiracy to commit, or complicity in committing, any offense identified in division (A)(2)(a) or (b) of this section;

(d) Any conduct reasonably indicating that any offense identified in division (A)(2)(a) or (b) of this section or any attempt, conspiracy, or complicity described in division (A)(2)(c) of this section has been, is being, or is about to be committed.

(B) Whoever violates this section is guilty of failure to disclose one's personal information, a misdemeanor of the fourth degree.

(C) Nothing in this section requires a person to answer any questions beyond that person's name, address, or date of birth. Nothing in this section authorizes a law enforcement officer to arrest a person for not providing any information beyond that person's name, address, or date of birth or for refusing to describe the offense observed.

(D) It is not a violation of this section to refuse to answer a question that would reveal a person's age or date of birth if age is an element of the crime that the person is suspected of committing.

## VII. <u>SUMMARY OF ARGUMENT</u>

## 1. ARGUMENT SUMMARY

The Plaintiff filed this complaint under against the City of Toledo Police Division, Toledo Police officer David Bright, Donald Comes and Sergeant Daniel Ray alleging violation of his constitutional rights against illegal searches and seizures and use of excessive force under the Fourth amendment, violation of his First amendment right to freedom of speech, violation of his Second amendment

right to bear arms, deprivation of liberty without Due Process of Law, failure to train, discipline, monitor, control and supervise officers by the Toledo Police Department, Acting Under Color of Law all pursuant 42 U.S.C.§ 1983 and § 1985, and state law claims of assault and battery, false arrest and malicious prosecution.

These claims arose out of a brief detention conducted by Toledo Police officers on June 16, 2010. This detention occurred after Officer David Bright was dispatched after a 9-1-1 emergency call alerting the police to a man carrying a gun on a city street. Officer Bright observed the Plaintiff carrying a pistol as described and proceeded to investigate in order to determine if the Plaintiff had was under a legal disability to carry a firearm. After the Plaintiff refused to answer the officer's question and made a furtive movement toward his gun, Officer Bright placed him in handcuffs. Within thirty-six minutes of the initial stop the officer had determined that the Plaintiff could lawfully carry a pistol. The officer released the Plaintiff and returned his gun to him.

In this case the actions of the police officers were based upon a reasonable suspicion that an offense had been committed and were therefore not violative of the Plaintiff's constitutional rights. Even if a violation of the Plaintiff's rights did occur, the officers were protected from liability under the doctrine of qualified immunity since their action were objectively reasonable and they did not act in violation of any clearly established law. The Plaintiff's state law claims against the

10

officers should be dismissed because they are immune from liability under Chapter 2744 of the Ohio Revised code. Their actions were not willful, wanton or malicious barring them from state law immunity protection. Finally, the Plaintiff has no right of action for violation of his second amendment right to bear arms under either the United States or Ohio Constitutions.

## VIII. <u>LAW AND ARGUMENT</u>

### <u>STANDARD OF REVIEW</u>

An appellate court reviews a grant of summary judgment *de novo* under the standard of F.R.C.P.56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317 324 (1986). The summary judgment procedure is designed to dispose of cases wherein there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See Fed. R.Civ. P. 56. Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

"Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

As to materiality, the substantive law will identify which facts are material. *Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.* Factual disputes that are irrelevant or unnecessary will not be counted."(EMPHASIS ADDED)

The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp. 2d 928, 930 (S.D. Ohio 1999).

## 1. THE OFFICERS HAD A LAWFUL RIGHT TO DETAIN AND SECURE THE PLAINTIFF TO PERFORM AN INVESTIGATORY STOP UNDER THE FOURTH AMENDMENT.

It is well-settled that a police officer has the legal right to stop and detain an individual if he "reasonable suspects" that the individual is involved in criminal activity; probable cause for the stop is not required for an investigatory stop. *United States. v. McDaniel*, 550 F. 2d 214 (5th Cir. 1977); see also, *United States v. Osborne*, 630 F.2d 374 (5th Cir. 1980), cert denied 450 U.S. 934; 101 S. Ct. 1398. A determination of whether an officer's suspicion was reasonable "is made in light of the totality of the circumstances" and "requires 'the detaining officers [to] have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006)

(quoting *United States v. Cortez*, 449 U.S. 411, 417-18; 101 S.Ct. 690 (1981).

Further, during an investigative stop, an officer may take such steps as are

reasonably necessary to protect his personal safety and maintain status quo so that

the purposes of the stop may be achieved. *United States v. Brown*, 51 F.3d 131 (8th

Cir. 1995); *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (quoting *Graham v.

Connor*, 490 U.S. 386; 396,109 S.Ct.1865,104 L.Ed.2d 443 (1989)). "Relevant

considerations include 'the severity of the crime at issue, whether the suspect poses

an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight." Id. (quoting

*Graham*, 490 U.S. at 396, 109 S. Ct. at 1872). In securing the person, the Sixth

Circuit has consistently held the use of handcuffs does not exceed the bounds of an

investigatory stop, so long as the circumstances warrant that precaution. See, e.g.,

*United States v. Walker*, 51 F.3d 274 (6th Cir. 1995) cert denied, 515 U.S. 1150,

115 S. Ct. 2594 (1995); *United States v. Monhollen*, 145 F.3d 1334 (6th Cir. 1998)

holding that officers may use handcuffs while securing the area during

investigatory stop).

Under these facts, there is no question that the Officers had the right to

conduct an investigatory stop and to secure Plaintiff's person to investigate his

conduct and to ensure their own safety. In *Baker v. Schwarb*, No. 14-10784, 2014

WL 4111375 (E.D. Michigan. Aug.. 19, 2014), a case cited by the District Court

for different reasons, the court found that legal activity such as open carrying can give rise to the reasonable suspicion necessary to justify an investigatory stop. In *Schwarb*, the police received 9-1-1 calls of armed men openly carrying rifles and hand guns through the streets of streets of suburban Sterling Heights, Michigan. Officers detained the men, disarmed them and verified their identification. After establishing that they were lawfully in possession of their firearms, the officers returned their weapons and released them. As in this case, the plaintiffs in *Schwarb* filed a 42 U.S.C § 1983 suit alleging violation of their First, Second and Fourth Amendment rights. The District Court dismissed their complaint finding that the officers had reasonable suspicion of criminal activity justifying an investigatory stop even though they observed exclusively legal activity. Reasonable officers may well have been concerned with what the plaintiffs would do next, not what they had already done , or were doing. *Schwarb*,Id.¶ ¶ 14-15. That court also noted that in cases such as this context matters. A person carrying a firearm in the Upper Peninsula of Michigan during hunting season would not generate the slightest cause for concern. But, a man openly carrying a gun through a quiet residential neighborhood is likely to be noticed and draw the attention of authorities.

In *Banks v. Gallagher* 3:08-cv-1110,2011WL718632,(M.D.Pa.Feb.22, 2011) a case cited by the *Schwarb* court,the actions and appearance of a man, which was "unusual and unprecedented", resulted in the local police department receiving a

fearful 911 call and an eventual investigatory stop by police. In response to the investigatory stop the plaintiff filed suit alleging that the stop violated his Fourth Amendment rights "because openly carrying a gun is perfectly legal in Pennsylvania, there can be no reasonable suspicion that criminal activity is afoot." Id. (emphasis in original). The court, however, noted that the plaintiff had a basic misunderstanding of "reasonable suspicion" because "'[a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity.'" Id. [quoting *United States v. Ubiles*, 224 F.3d 213, 217 (3d Cir.2000)]. Other courts, including the Sixth Circuit, have found no deprivation of Fourth Amendment rights where police officers to detain and question armed individuals who are not actually engaged in criminal behavior. *Schubert v. City of Springfield*, 589 F.3d 496 (1st Cir.2009) (lawyer with a license to carry a handgun stopped and disarmed by police on his way to a court house) *Butcher v. City of Cuyahoga Falls*, N.D. Ohio, No.5:11-cv-939, 2011 WL 5971043, (Nov.28, 2011)(man carrying a rifle stopped and disarmed by police officer in front of a drug store),*Campbell v. Stamper*, 244 Fed.Appx.629, 2007 WL 1958629 (6th Cir.2007)(man resting along roadside with a rifle handcuffed and detained by officers).

## 2. THE OFFICERS HAD REASONABLE SUSPICION TO STOP AND DETAIN THE PLAINTIFF TO CONDUCT AN INVESTIGATION UNDER THE DOCTRINE ESTABLISHED BY *TERRY V. OHIO.*

An example of when reasonable suspicion can be formed from purely legal activity is the seminal case of *Terry v. Ohio* 392 U.S..1, 88 S.Ct.1868, 20 L.Ed.2d 889 (1968). In *Terry*, a plainclothes officer was on his beat one afternoon in downtown Cleveland when he detained and searched two me who repeatedly walking past store windows. The Supreme Court held that the officer had reasonable suspicion to stop and search the men. Id. at 28. This was so even though there is nothing illegal about walking down a public street and looking into store windows. Nevertheless, the officer was justified in believing that criminal activity could be afoot – their conduct gave rise to a reasonable suspicion that the men were casing a store for a potential robbery and might be armed.

In this case, Shawn Northrup asserts that the mere act of open carrying was insufficient to give rise to the requisite suspicion in the mind of a reasonable officer that a crime is or is about to be committed. While Officer Bright did not have knowledge of the specific dialogue between the Plaintiff and Allen Rose, he knew that the sight of a man with a gun in this neighborhood generated sufficient concern to cause someone to place an emergency call.

Perhaps Shawn Northrup wished that we lived in a world where the sight of armed gunmen walking down the road was a common and accepted as the sight of a man walking his dog. But, Toledo, Ohio is not Syria, or the Ukraine, or Iraq. Toledo is in America and in America mass shootings have been on a recent and

dramatic rise. Given this troubling and deadly historical backdrop, Officer Bright and Sergeant Ray and were faced with a choice: respond to the communities' fear and the appearance of the gunman by performing an investigatory stop, or do nothing while Northrup continued walking down Rochelle and hope that he was not about to start shooting. Officers Bright and Ray chose the first option and any other reasonable officer given the totality of the circumstances in this case would have believed.

### 3. THE NATURE OF THE INVESTIGATORY STOP WAS LIMITED IN SCOPE AND DURATION TO ACCOMPLISHING THE BASIS OF THE STOP

An investigatory stop is reasonable where it is sufficiently limited in time and the investigative means used were the least intrusive means reasonably available. *United States v. Davis*, 430 F.3d 345 (6th Cir.2005). The ultimate question is whether the detention exceeded the purpose and objective of the stop. *United States v. Bradshaw*, 102 F.3d 204, 212 (6th Cir.1996).

In this case the Plaintiff was detained for 36 minutes based upon the Toledo Police dispatcher's call log. The Plaintiff does not dispute this amount of time.(Northrup Depo.p.38 ) There is no rigid time limit for a Terry stop.*United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993). A stop of 36 minutes to one hour is not improper when all steps in the stop are necessary to ensure the officer's safety and to confirm or dispel the suspicions. *Houston v. Clark County Sheriff*

*Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir.1999). Both Officer Bright's and the public's safety required that the Plaintiff's weapon be secured so that he could not potentially cause injury. It was also necessary to run checks to determine the Plaintiff's ability to posses a firearm and to question the Plaintiff with respect to his intentions. The officer's question concerning Mr. Northrup's possession of a concealed carry permit was an expeditious way of determining the Plaintiff's lawful right to posses firearms generally. In conducting a Terry stop an officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. *United States v. Campbell* supra. at 372. Had Northrup answered the question promptly, his detention would have undoubtedly been shorter.

As the stop was based on reasonable suspicion and was limited the time and scope, Plaintiff's Fourth Amendment rights were not violated and the claim must be dismissed.

### 4. <u>THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY</u>

In federal civil rights actions seeking money damages, government officials performing discretionary functions are entitled to qualified immunity so long as their acts do not violate clearly established statutory or constitutional rights of which a reasonable officer would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In evaluating a claim of qualified

immunity, the United States Supreme Court has directed that a reviewing court must first determine whether the facts alleged in support of civil rights claim demonstrate the violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

If the facts alleged would establish a constitutional violation if substantiated, a reviewing court must then determine whether it would have been clear to a reasonable officer at the time of the alleged violation that their actions were unlawful in the situation confronted. The qualified immunity determination in this context is ordinarily a question that should be decided by the court, *Hunter v. Bryant*, 502 U.S. 224, 228 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Likewise, in making this determination, the court should ask whether the government agent acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed after the fact. *Hunter* at 50 U.S. 224, 228.

A generally recognized constitutional right is "clearly established" for qualified immunity purposes within the context of a factually discreet claim if there is decisional authority directly on point, or when the application of previous cases to such facts is clearly foreseeable and apparent. *Blake v. Wright*, 179 F.3d 1003, 1007-08 (6th Cir. 1999). Put another way, the unlawfulness of the officers' actions in the light of pre-existing law must be apparent. *Crawford v. Geiger*, 996

F.Supp.2d 603,612 (N.D.Ohio,2014). In this respect, a reviewing court must determine whether the plaintiff has offered sufficient evidence to indicate what the official allegedly did was "objectively unreasonable." See *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc).

In summary, the qualified immunity standard protects officers from civil liability so long as their conduct is reasonable, even if a reviewing court might otherwise find such conduct violative of a plaintiff's constitutional right. *Brosseau v. Haugen*, 543 U.S. 194, 198 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004) . "Through the use of qualified immunity, the law shields 'government officials performing discretionary functions ... from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.' "*O'Malley v. City of Flint*, 652 F.3d 662, 667 (6th Cir.2010). Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Ciminillo v. Streicher,* 434 F.3d 461, 466 (6th Cir.2006).

In this case it is undisputed that Officer Bright responded to a citizen complaint received via 9-1-1 that a man matching the Plaintiff's description was observed on Rochelle Dr. carrying a firearm. As Officer Bright approached the Plaintiff and observed that the information provided by Allen Rose the 9-1-1 caller was accurate, it was not objectively unreasonable to detain Northrup under *Terry v.*

*Ohio* due to the possibility that an armed person was causing alarm to other persons in the neighborhood.

A.    The Officers acted reasonable in light of clearly established law with respect to investigatory stops.

At the time the officers stopped Plaintiff, they were aware that he was armed with a pistol.   There are no allegations that Officer Bright possessed any specialized knowledge that Plaintiff was not a threat to his safety, the officer's safety or the safety of others.   Given Plaintiff's location, the obvious possession of a firearm and the fact that someone had felt alarmed enough to call the police, the officer reasonably believed he had reasonable suspicion to conduct an investigatory stop.   The officers only detained Plaintiff as long as was necessary to conduct the investigation.   Plaintiff admits that his firearms were returned at the end of the stop and that he was free to leave.   A reasonable officer would believe that this brief, limited stop complied with the Fourth Amendment.

B.   Officer Bright and Sergeant Ray Are Entitled To Qualified Immunity For  Campbell's Claim That He Was Injured As A Result Of Being Handcuffed.

The Plaintiff claims that he suffered injury to his wrists as a result of being handcuffed. Specifically, Northrup alleges that the handcuffs left marks on his wrists and his fingers were temporarily numb.(Northrup Depo.R.28, p.41).

Claims for injuries resulting from alleged excessively forceful handcuffing are evaluated under the Fourth Amendment. See *Burchett v. Kiefer*, 310 F.3d 937

(6th Cir. 2002). In order to state a viable Fourth Amendment claim, a plaintiff must allege that he complained to the officers that the handcuffs were too tight, and as a result of being left in handcuffs that were applied too tightly, the plaintiff incurred injury to his wrists. See *Meadows v. Thomas*, 117 Fed.Appx. 397, 405 (6th Cir. 2004).

First, the evidence in this case demonstrates that Sergeant Ray did not handcuff the Plaintiff. Accordingly, he is entitled to qualified immunity on this claim. With respect to Officer Bright, the evidence shows he loosened the cuffs immediately after Northrup complained about the tightness of the handcuffs.(Northrup Depo.R.28,p.37). Further, Northrup admits that he never requested any medical assistance from Officer Bright during the incident. (Northrup Depo.R.28, p. 42).

In *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997) the court held that a police officer was entitled to qualified immunity on a handcuffing claim where the plaintiff alleged that he was left in excessively tight handcuffs for an unreasonable period of time and suffered skin abrasions. Likewise, in *O'Malley v. City of Flint*, supra at 671 the court found that an officer will be still be entitled to summary judgment based upon qualified immunity on a claim of excessive force if it would not be clear to a reasonable officer that he was violating the plaintiff's rights.

In summary, the Plaintiff has alleged no more than de minimis injury to his wrist and fingers associated with the normal discomforts of being handcuffed, as chaffing of the wrists occurs even when handcuffs are properly applied.(Ray Depo.R.29,pp.45-46)

C. Punitive Damages

Section 1983 does not contain a provision for damages. However, punitive damages are available pursuant to Section 1983. *See Smith v. Wade,* 461 U.S. 30, 35–36, 103 S.Ct. 1625, 1629, 75 L.Ed.2d 632 (1983). Deterrence of future egregious conduct is a "primary purpose" of Section 1983, as well as of punitive damages. *Id.* at 49, 103 S.Ct. at 1636. In *Smith* the Supreme Court held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 56, 103 S.Ct. 1625, 103 S.Ct. at 1640. Punitive damages should only be awarded in the "most egregious cases." *White v. Burlington Northern & Santa Fe Railroad Co.,* 364 F.3d 789, 806 (6th Cir.2004), *aff'd,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). The court concludes that      Plaintiff has not created a genuine issue of material fact regarding whether he is entitled to punitive damages for his Section 1983 claim relating to the alleged unlawful search. There is no evidence showing the evil motive or the reckless and callous indifference of

Officer Bright and Sergeant Ray. Therefore, the punitive damages claim under Section 1983 should be dismissed.

### 5. OFFICER DAVID BRIGHT AND SERGEANT DANIEL RAY WERE ENTITLED TO GOVERNMENTAL IMMUNITY PROTECTION UNDER THE LAWS OF THE STATE OF OHIO FOR PLAINTIFF'S CLAIMS OF ASSAULT, BATTERY, FALSE ARREST AND MALICIOUS PROSECUTION.

In state claims seeking money damages, police officers are entitled to a presumption of immunity under Revised Code Chapter 2744. By its terms, O.R.C. §2744.03(A)(6) operates as a presumption of immunity. *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90 (1995).

R.C. §2744.03(A)(6) immunizes an officers' actions from state law-based civil liability, subject to certain limited exceptions." *Crawford v. Geiger*, supra. These exceptions include (a) acts or omissions manifestly outside the employee's scope of duty; (b) acts of omissions done with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) where civil liability is expressly imposed by statute. The only exception that has been alleged by the Plaintiff is R.C. §2744.03(A)(6)(b), that these officers acts were done with malicious purpose, in bad faith, or in a wanton or reckless manner.

Whether immunity under R.C. §2744.03(A)(6) applies "is purely a question of law, for it always involves the interpretation or application of a statutory provision that is purported to remove the employee's immunity." *Johnson v. Godsey*,2[nd]

Dist.App.No.2012CA80,2013-Ohio-3277, at ¶38.   The "wanton or reckless manner" standards have been recently clarified by the Supreme Court of Ohio in *Anderson v. Massillon*, 134 Ohio St.3d 380, 983 N.E.2d 266 (2012)"Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson*, at ¶34, citing *Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705 (1990).   Further, "recklessness is a high standard." *Johnson*, at ¶35, citing *Rankin v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 118 Ohio St.3d 382, 2008-Ohio-2567. "By implication, an employee is immune from liability for negligent acts or omissions." *Anderson* at ¶ 23.

"Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Anderson*, at ¶33 (string cite omitted).

None of these exceptions apply to this case.  There does not appear to be any dispute that Officer Bright or Sergeant Ray were acting within the scope of their employment.  No section of the Revised Code expressly imposes liability on these Defendants for Plaintiff's claim.  Further, there are no facts pled to show that any of these Defendants acted with a malicious purpose, in bad faith or in wanton or reckless manner.

"Malice" is the willful and intentional design to harm another by inflicting serious injury without excuse or justification. *Garrison v. Bobbitt*, 134 Ohio App.3d 373, 384 (1999). "Bad faith" implies sinister motive and also refers to that which has "no reasonable justification." *Hicks v. Leffler*, 119 Ohio App.3d 424, 429 (1997). Neither are present in this case.

Sergeant Ray was not present at the time when the Plaintiff was initially detained and he had no involvement in the handcuffing of Shawn Northrup. As such, he is immune from Plaintiff's state law claims.

Officer Bright detained Plaintiff, who was obviously armed with a sidearm and walking in the residential neighborhood described by the 9-1-1 caller. Plaintiff was briefly detained while the officers determined Plaintiff's ability to possess the firearms and his intentions. Plaintiff was then released with a summons to appear in court after it was determined that had the right to possess a firearm. The facts as alleged do not show that either officer was reckless, much less acting wantonly, in bad faith or with malicious

To prevail on a claim of false imprisonment, the plaintiff must demonstrate that he was intentionally and unlawfully detained. *Hodges v. Meijer*, Inc., 129 Ohio App.3d 318 (1998). As shown above, the officers lawfully detained Plaintiff while they conducted an investigatory stop. There are no allegations that the detention exceeded the time necessary to complete the investigatory stop. Further,

there are no allegations that the officers intentionally delayed or prolonged the investigatory stop. As Plaintiff is unable to show that his detention was unlawful, he cannot maintain his claim for false imprisonment. A claim for false arrest is not distinguishable from a claim for false imprisonment in its essential elements because each claim requires the complaining party to prove that he was intentionally confined within a limited area, for any appreciable time, against his will and without lawful justification. *Evans v. Smith*, 97 Ohio App.3d 59, 70, 646 N.E.2d 217 (1994), citing *Feliciano v. Kreiger*, 50 Ohio St.2d 69, 362 N.E.2d 646 (1977).

Plaintiff alleges that the officers committed an assault and battery during his stop. To succeed on a claim for battery, the plaintiff must prove the defendant intended to cause a harmful or offensive contact, and that a harmful contact resulted. *Love v. City of Port Clinton*, 37 Ohio St.3d 98, 99 (1988).

Assault is the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonable places the other in fear of such contact. *Smith v. John Deere Co.*, 83 Ohio App. 3d 398, 406 (1993). The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching. Id.

Privilege is a defense to these claims. Id. Police officers are privileged to commit battery during the course of an arrest, provided that excessive force is not

used. *Alley v. Bettencourt*, 134 Ohio App.3d 303, 313(1999). There are no allegations that the officers used any excessive force (or any force at all beyond handcuffing). Likewise, the threat of force was non-existent.

The District Court also erred in failing to find that the Defendants were immune from liability for Plaintiff's claims of malicious prosecution. To establish the tort of malicious prosecution, a plaintiff must prove: (1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused. *Criss v. Springfield Twp.*, 56 Ohio St.3d 82, 84, 564 N.E.2d 440 (1990). The essence of an action for malicious prosecution is a lack of probable cause. *Melonowski v. Judy*, 102 Ohio St. 153, 131 N.E. 360 (1921), paragraph one of the syllabus. If a plaintiff establishes a lack of probable cause, "the legal inference may be drawn that the proceedings were actuated by malice." *Id.* The person instituting the criminal proceeding is not required to have evidence that is sufficient to convict the plaintiff; rather, he is required only to have evidence that is sufficient to justify a belief that the accused is guilty of the charged offense. *Id.* at 156, 131 N.E. 360. Here, the Plaintiff's failure to promptly answer Officer Bright's questions was justification for his belief that Northrup should be charged with Failure to Provide Personal Information. The officers' decision to file this charge also demonstrates their lack of malice. By asking the Plaintiff repeatedly to produce his concealed carry permit, Officer Bright sought to

eliminate the need to file any charges. Finally, the decision of Officer Bright and Sergeant Ray to contact the Toledo Police detective bureau proves that they sought advice on which charge, if any, should be filed. Officers motivated by malice would not have taken either of these steps.

## IX. <u>CONCLUSION</u>

For the reasons stated above, this Court should grant Appellants' appeal and overrule the District Court's September 30, 2014 Order.

Respectfully submitted,

ADAM W. LOUKX, DIRECTOR OF LAW

<u>/s/ John T. Madigan, Senior Attorney</u>

## X. <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the proof brief complies with the Federal Rule of Appellate Procedure 32(a)(7)(B) and that it contains only 30 pages and does not exceed the type volume limitation of Federal Rule of Appellate Procedure 32.

Respectfully submitted,

ADAM W. LOUKX, DIRECTOR OF LAW

<u>/s/John T. Madigan</u>
John T. Madigan, Senior Attorney 0023614)
City of Toledo Department of Law

One Government Center, Suite 2250
Toledo, Ohio 43604
Telephone: (419) 245-1020
Fax: (419) 245-1090
*Counsel for Appellants*

## XI. <u>CERTIFICATE OF SERVICE</u>

I certify that on the 16th day of December, 2014, I electronically filed the foregoing document with the Clerk of Courts using the CM/ECF system to serve all counsel of record.

<u>/s/ John T. Madigan, Senior Attorney</u>

# ADDENDUM  A

1

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**SHAWN NORTHRUP**
Plaintiff-Appellee

**v.**

**CITY OF TOLEDO POLICE DIVISION,** *et al.*
Defendant-Appellants

**On Appeal from the United States District Court
For the Northern District of Ohio,
Western Division**

**DEFENDANT-APPELLANTS, CITY OF TOLEDO POLICE DIVISION,
OFFICER DAVID BRIGHT'S AND SERGEANT DANIEL RAY'S
DESIGNATION OF APPENDIX CONTENTS**

Pursuant to Sixth Circuit Rule 30(b), Defendant-Appellants, City of Toledo Police Division, Officer David Bright and Sergeant Daniel Ray, hereby designates the following relevant Court documents from the District Court's electronic record.

| DESCRIPTION OF ENTRY | DATE | RECORD ENTRY NO. |
|---|---|---|
| Docket Sheet | N/A | N/A |
| Shawn Northrup's Complaint | 06/15/12 | 1 |
| Answer to Complaint by Toledo | 07/31/2012 | 5 |
| City of Toledo's Motion for Summary Judgment | 01/29/14 | 24 |
| Deposition of David Bright | 01/29/14 | 26 |
| Deposition of Donald Comes | 01/29/14 | 27 |
| Deposition of Shawn Northrup | 01/29/14 | 28 |
| Deposition of Donald Ray | 01/29/14 | 29 |
| Shawn Northrup's Response in Opposition to Motion for Summary Judgment of Toledo | 04/01/14 | 38 |
| Deposition of Rose | 04/01/14 | 39 |
| City of Toledo's Reply in Support of its Motion for Summary Judgment on the Issue of Liability Only | 04/14/14 | 44 |
| Memorandum Opinion and Order Granting in Part and Denying in Part Toledo's Motions for Summary Judgment | 09/30/14 | 45 |
| Judgment Entry | 09/30/14 | 46 |
| Notice of Appeal | 10/24/14 | 49 |

Respectfully submitted,

ADAM W. LOUKX, DIRECTOR OF LAW

<u>/s/ John T. Madigan,</u>
John T. Madigan, Senior Attorney 0023614)
City of Toledo Department of Law
One Government Center, Suite 2250
Toledo, Ohio 43604
Telephone: (419) 245-1020
Fax: (419) 245-1090
*Counsel for Appellants*