# CASE NO. 14-4050

*In the*

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

### SHAWN NORTHRUP,
**Plaintiff-Appellee,**

**vs.**

### CITY OF TOLEDO, POLICE DIVISION, *et al.,*
**Defendants-Appellants.**

On Appeal from the United States District Court
For the Northern District of Ohio
Western Division at Toledo
Judge Jeffrey J. Helmick
Case No. 3:12-CV-01544

---

## MERIT BRIEF OF PLAINTIFF/APPELLEE SHAWN NORTHRUP

---

Daniel T. Ellis     (0038555)
LYDY & MOAN, Ltd.
4930 N. Holland-Sylvania Rd.
Sylvania, OH 43560
Telephone: (419) 882-7100
Facsimile: (419) 882-7201
Email: dellis@lydymoan.com

Counsel for Plaintiff-Appellee,
Shawn Northrup

Adam W. Loukx, Director of Law (0062158)
John T. Madigan, Senior Attorney (0023614)
City of Toledo Department of Law
One Government Center, Suite 2250
Toledo, Ohio 43604
Telephone: (419) 245-1090
Fax: (419) 245-1090

Counsel for Defendants-Appellants

# TABLE OF CONTENTS

I.     TABLE OF CONTENTS ................................................... i

II.    TABLE OF AUTHORITIES ...............................................iii

III.   JURISDICTIONAL STATEMENT.......................................1

IV.    STATEMENT OF ISSUES PRESENTED FOR REVIEW ............4

V.     STATEMENT OF THE CASE ............................................5

VI.    STATEMENT OF FACTS .................................................5

VII.   SUMMARY OF THE ARGUMENT.....................................13

VIII.  ARGUMENT ...............................................................14

       1. THIS COURT LACKS JURISDICTION TO REVIEW DENIAL
          OF   QUALIFIED   IMMUNITY   THAT   TURNS   ON
          EVIDENTIARY ISSUES................................................14

       2. OFFICER BRIGHT AND SERGEANT RAY DID NOT HAVE
          SPECIFIC AND ARTICULABLE SUSPICION THAT SHAWN
          NORTHRUP WAS ENGAGED IN ANY CRIMINAL ACTIVITY
          TO JUSTIFY A *TERRY V. OHIO* STOP.............................19

       3. OFFICER BRIGHT AND SERGEANT RAY DID NOT HAVE
          PROBABLE CAUSE TO STOP, QUESTION AND/OR ARREST
          SHAWN NORTHRUP.................................................24

       4. THE SCOPE AND DURATION OF A *TERRY* STOP IS
          IRRELAVENT WHEN AN INVESTIGATORY STOP IS
          UNJUSTIFIED AT ITS INCEPTION...............................29

       5. OFFICER BRIGHT'S ACTION IN CONCERT WITH
          SERGEANT RAY IN ARRESTING MR. NORTHRUP
          VIOLATED CLEARLY ESTABLISHED FEDERAL AND
          STATE LAWS AND ARE NOT ENTITLED TO QUALIFIED
          IMMUNITY..............................................................30

i

6. THE FACTS ASSERTED BY NORTHRUP ESTABLISH THAT OFFICER BRIGHT AND SERGEANT RAY ARE NOT ENTITLED TO STATUTORY IMMUNITY UNDER R.C. § 2744.03 BECAUSE THEY ENGAGED IN MALICIOUS CONDUCT, IN BAD FAITH, IN A WANTON AND RECKLESS MANNER BY INTENTIONALLY DETAINING, ARRESTING AND ASSERTING EXCESSIVE FORCE AND TRUMPING UP FALSE CHARGES TO JUSTIFY THEIR CONDUCT AND INTERFERING WITH NORTHUP'S CONSTITUTIONAL RIGHTS..................................................................33

7. OFFICER BRIGHT VIOLATED NORTHRUP'S FOURTH AMENDMENT RIGHT OF EXCESSIVE FORCE WHEN HE HANDCUFFED HIM WITHOUT PROBABLE CAUSE AND IN AN UNDULY TIGHT MANNER.....................................36

IX. CONCLUSION ...............................................................38

X.  CERTIFICATE OF COMPLIANCE .......................................39

XI. CERTIFICATE OF SERVICE ..............................................40

XII. ADDITIONAL DESIGNATION OF
     APPENDIX CONTENTS.......................................................41

# TABLE OF AUTHORITIES

## CASES

*Atkins v. Lanning,* 556 F.2d 485 (10th Cir.1977)............................................32

*Avery v. King,* 110 F.3d 12 (6th Cir.1997)......................................................31

*Burchett v. Kiefer,* 310 F.3d 937, 945 (6th Cir. 2002) ....................................37

*Delaware v. Prouse,* 440 U.S. 648,
99 S.Ct. 1391, 1401 (U.S.Del.,1979): ............................................................23

*Dietrich v. Burrows* 976 F.Supp. 1099,
1103 (N.D.Ohio,1997) .....................................................................................31

*Fettes v. Hendershot, et al.* 375 Fed. Appx. 528,
534 (2010), WL 1697727 (C.A. 6 (Ohio))......................................................36

*Florida v. J.L.,* 529 U.S. 266, 266, 120 S.Ct. 1375, 1377 (2000).....................21

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727,
73 L.Ed.2d 396 (1982) ....................................................................................30

*Jeffers v. Heavrin,* 10 F.3d 380 (6th Cir.1993) ..............................................32

*Jefferson v. Lewis,* 594 F.3d 454, 459 (6th Cir. 2010) ....................................14

*Kostrzewa v. City of Troy,* 247 F.3d 633, 641 (6th Cir.2001)........................36

*Maryland v. Pringle,* 540 U.S. 366, 124 S.Ct. 795, 800 (U.S.Md., 2003) ....24

*Mitchell v. Forsyth,* 472 U.S. 511, 530 (1985) ...............................................14

*Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657,
134 L.Ed.2d 911.(1996) ...................................................................................24

*Painter v. Robertson,* 185 F.3d 557, 569 (6th Cir.1999)..................................24

*Pray v. City of Sandusky,* 49 F.3d 1154 (6th Cir.1995) ...................................32

iii

*Shevlin v. Cheatham*, 211 F.Supp.2d 963, 968 (S.D.Ohio, 2002)...........25, 35

*State v. Darrah*, 64 Ohio St.2d 22, 26,
412 N.E.2d 1328, 1330 - 1331 (Ohio, 1980) .......................................................25

*Terry v. Ohio* 392 U.S. 1, 21-22, 88 S.Ct. 1868,
1880 (U.S.Ohio 1968) .........................................................................4, 20, 22

*U.S. v. Blair*, 524F.3d 740, 752 (6th Cir. 2008) ......................................................30

*United States v. Cortez*, 449 U.S. 411,
101 S.Ct. 690, 66 L.Ed.2d 621 (1981).......................................................19, 21, 22

*United States v. Harris*, 255 F.3d 288, 292 (6th Cir.2001)............................25

*United States v. King*, 990 F.2d 1552, 1559 (10th Cir. 1993)............................23

*United States v. Nathaniel Black*, 707 F.3d 531(4th Cir.) ..................................23

## STATUTES

28 U.S.C. §1331 ......................................................................................... 2

28 U.S.C. §1367 .........................................................................................2

42 U.S.C. §1983 ......................................................................................... 2

42 U.S.C. §1985 ......................................................................................... 2

42 U.S.C. §1988 ......................................................................................... 2

Ohio Revised Code § 2921.29.....................................................12, 28, 33, 34

Ohio Revised Code § 2917.31.......................................................................26

Ohio Revised Code § 2744.03................................................................33, 36

## III. JURISDICTIONAL STATEMENT

This Court lacks interlocutory appellate jurisdiction to review the denial of qualified and governmental immunity because Officer Bright and Sergeant Ray have rejected the facts alleged by Shawn Northrup and the appellate issues are not purely legal.

Shawn Northrup filed a Complaint on June 15, 2012 against the City of Toledo and three of its police officers in their conduct in stopping, searching, seizing, and ultimately arresting him without any legal or factual basis while on a leisurely walk with his family. Thereafter, they falsely charged him with a crime to cover up their wrongful actions (Verified Complaint, RE 1, PageID# 1-24).[1] Northrup asserted that the City of Toledo and its police officers violated his Fourth Amendment Right to be free from unreasonable searches and seizures and asserted they used excessive force when they handcuffed and arrested him without probable cause. They also violated his First Amendment Right to express symbolic speech and Right to Bear Arms under the Second Amendment and under the Ohio Constitution, Article 1, Sections 1 and 4. Mr. Northrup also asserted State Law claims of assault and battery, false arrest, malicious prosecution and sought punitive damages.

---

[1] Shawn Northrup filed a motion to amend the Verified Complaint by Interlineation substituting the "City of Toledo" for "City of Toledo, Police Division" to clarify he had filed suit against the City of Toledo (Motion, RE 47). The Court granted that motion without objection (Order, RE 48).

The action arose under the Constitution of the United States, the Constitution of the State of Ohio and Federal Civil Rights Law, *inter alia*, under 42 U.S.C. Sections 1983 and 1988 and Ohio Constitution Article 1, Sections 1, 4 and 16, and Ohio Law. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §1331, federal question jurisdiction, based on the claims raised by Plaintiff under 42 U.S.C. §§ 1983, 1985 and 1988 alleging that Plaintiff has been deprived of his civil rights by defendants as provided by the aforementioned laws of the United States. This Court had supplemental and pendent jurisdiction over the state constitutional, statutory, and common law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal law claims that it forms part of the same case or controversy as the federal law claims.

Officers Bright, Comes and Sergeant Ray and the City of Toledo filed a Motion for Summary Judgment on all of plaintiffs claims (Motion for Summary Judgment, RE 24). Mr. Northrup filed a Memorandum In Opposition to the Motion for Summary Judgment (Memorandum in Opposition to Defendants' Motion for Summary Judgment, RE 38). Defendants filed a Reply (Reply Memorandum, RE 44).

On September 30, 2014, the District Court granted the Motion for Summary Judgment in part and denied it on part (Judgment Entry, RE 46 and Memorandum Opinion and Order, RE 45). The Court granted summary judgment on Mr.

Northup's claims: 1) First Amendment – right to symbolic speech; 2) right to bear arms – Second Amendment and Article I, section 4 of the Ohio Constitution; 3) Fourth Amendment *Monell* claims; 4) state law and punitive damage claims against the City of Toledo; and 5) all remaining claims against Officer Comes (Judgment Entry, RE 46 and Memorandum Opinion and Order, RE 45).

The District Court denied Defendants motion for summary judgment on Mr. Northrup's claims against Officer Bright and Sergeant Ray: 1) for violation of his Fourth Amendment rights; 2) for assault, battery, wrongful arrest, and malicious prosecution under Ohio law, and 3) for punitive damages on the grounds there were disputed material facts to be decided by a jury requiring the denial of summary judgment ((Judgment Entry, RE 46 and Memorandum Opinion and Order, RE 45).

Officer Bright and Sergeant Ray timely filed a Notice of Appeal on October 24, 2014 on the interlocutory appellate issue of whether summary judgment should have been denied on their asserted defense of qualified and governmental immunity (Notice of Appeal, RE 49, PageID# 606-608). The Appellants have not conceded Northrup's version of the facts for purpose of this appeal and this Court lacks appellate jurisdiction to review the denial of qualified and governmental immunity. Officer Bright and Sergeant Ray have rejected the facts alleged by Shawn Northrup and the appellate issues are not purely legal.

## IV.  STATEMENT OF ISSUES PRESENTED FOR REVIEW

**Issue 1.** Whether this Court has Jurisdiction to Review denial of qualified immunity that requires the determination of disputed facts and evidentiary issues.

**Issue 2.** Whether the District Court correctly determined Officer Bright and Sergeant Ray did not have probable cause or reasonable, articulable suspicion of criminal activity to justify a *Terry v. Ohio* stop.

**Issue 3.** Whether the District Court correctly determined that a genuine dispute of material facts precluded summary judgment on whether Officer Bright and Sergeant Ray violated Shawn Northrup's clearly established Fourth Amendment right to be free from unconstitutional searches and seizures.

**Issue 4.** Whether the District Court correctly determined that a genuine dispute of material facts precluding summary judgment on Shawn Northrup's excessive force claim as to the permissibility and use of handcuffs.

**Issue 5.** Whether the District Court correctly determined that a genuine dispute of material facts on whether Officer Bright and Sergeant Ray actions were motivated by bad faith and malice precluding summary judgment on the state law claims of assault, battery, false arrest and malicious prosecution.

**Issue 6.** Whether the District Court correctly determined that a genuine dispute of material facts on whether Officer Bright and Sergeant Ray actions were motivated by bad faith and malice precluding summary judgment on Shawn Northrup's claim for punitive damages.

# V. **STATEMENT OF THE CASE**

Northrup accepts Appellants Statement of the Case.

# VI. **STATEMENT OF FACTS**

On June 16, 2010, Shawn and Denise Northrup decided to take a leisurely walk in their neighborhood with their daughter, grandson and a Yorkie dog (Deposition of Shawn C. Northrup, RE 28 PageID# 365, LL 14-25 ("Northrup Depo.") and Affidavit of Denise Northrup, RE 38-3 PageID# 522, ¶ 4). They had been taking these walks regularly since early spring, dozens and dozens of times (Northrup Depo., RE 28 PageID# 368, LL 20-24). Mr. Northrup openly carried a holstered firearm in full compliance with all state and federal laws while walking with his family (Northrup Depo., RE 28 PageID# 366, LL 20-25). Mr. Northrup always carries a firearm for the security of his family and to educate the public that firearms are not dangerous (Northrup Depo., RE 28, PageID# 367, LL 3-11).

As the Northrup family proceeded down the street and approached the intersection of Dulton and Rochelle, they noticed a man on a motorcycle (Northrup Depo., RE 28, PageID# 385, LL 18-25, PageID# 386, LL 1-7 and Affidavit of Denise Northrup, RE 38-3 PageID# 523, ¶ 6). The person on the motorcycle was Alan Rose (Northrup Depo., RE 28, PageID# 384, LL 21-24). Mr. Rose started yelling to the Northrup family that "you can't do that, you can't walk around with a gun like that" (Northrup Depo., RE 28, 386, LL 16-19). The Northrop's

responded that "open carry is legal in Ohio and they were not doing anything wrong" (Northrup Depo., RE 28, PageID# 386, LL 20-23). The Northrup family continued on their walk and Mr. Rose kept yelling "you can't do that" (Northrup Depo., RE 28, PageID# 387, LL 1-11). As Mrs. Northrup continued to try and explain that open carry was permissible, Mr. Northrup said to his wife, "honey listen, this guy is being aggressive, he's following us, let's just keep moving, let's mind our own business; you are not going to explain things to him or change his mind in any way" (Northrup Depo., RE 28, PageID# 387, LL 7-11). The Northrup family continued their walk (Northrup Depo., RE 28, PageID# 387, LL 16-17).

Alan Rose testified that he had seen Mr. Northrup openly carrying a holstered firearm around the neighborhood a couple times prior to the day he called 911 (Deposition of Alan Rose, RE 39, PageID# 539, LL 25, PageID#540, LL 1-2). He also stated on the occasions he saw Mr. Northrup open carrying a firearm he did not threaten anyone and never took it out of the holster (Rose Depo., RE 39, PageID#540, LL 1-13). Mr. Rose testified he called the 911 operator because he did not know if it was lawful to openly carry a firearm (Rose Depo., RE 39 PageID#547, LL 15-16). Mr. Rose told the 911 operator that Mr. Northrup was walking down the street walking his dog and never claimed that Mr. Northrup had engaged in any unlawful or criminal activity. He told the 911 operator he did not

want to send out a crew if open carry was legal in Ohio (Rose Depo., RE 39,

PageID#549, LL 22-25, PageID# 550 and PageID# 551, LL 1-4).

Mr. Rose's conversation with the dispatcher went as follows:

> Dispatcher: 911
> Caller:      I have a guy walking down the street here carrying a gun out in the open.
> Dispatcher: Where is this?
> Caller: It's on Rochelle, He's walking a dog.
> Dispatcher: Is it a rifle or a handgun?
> Caller: A handgun, and he's telling me it's legal to carry out in the open.
> Dispatcher: If you have a CCW.
> Caller: You don't have to conceal it?
> Dispatcher: I'll get a crew out though. Is he white, black, or Hispanic?
> Caller: **I'm not going to call a crew out if it's legal to carry a gun out in the open.**
> Dispatcher: Because I'm not an officer.
> Caller: All right. He's white.
> Dispatcher: And you said he's walking his dog?
> Caller: Yeah on Rochelle Drive.
> Dispatcher: All right. Got them notified.
> Caller: Okay, I'll be watching the guy.
> Dispatcher: Okay. Bye-bye.

> (Rose Depo., RE 39, PageID#549, LL 22-25, PageID# 550 and PageID# 551, LL 1-4, emphasis added; RE 41, Audio DVD, Exhibits D and E).

After about eight minutes, as the Northrup family continued on their normal

walk, a Toledo Police car drove up behind them (Northrup Depo., RE 28, PageID#

389, LL 14-20 and Affidavit of Denise Northrup, RE 38-3, PageID# 523, ¶ 8). As

the Northrup family walked, their children would ride their bikes past a couple of

houses, then turn around and ride back. As his daughter was riding toward them, she said, "Daddy, there's a police car coming down the street" (Northrup Depo., RE 28, PageID# 390, LL 3-6). Mr. Northrup got out his cell phone and started recording and shortly thereafter he heard, "excuse me, can you turn around" (Northrup Depo., RE 28, PageID# 390, LL 16-22). Mr. Northrup had his cell phone in his left hand and the dog leash in his right hand (Northrup Depo.,RE 28, PageID# 391, LL 5-9).

Officer Bright testified that he understood as early as 2003 that private citizens were permitted to openly carry a firearm in Ohio (Deposition of Officer Bright ("Bright Depo."), RE 26, PageID# 178, LL 7-25, PageID# 208, LL 3-5 and PageID# 256, LL 22-23). Prior to stopping Mr. Northrup, Officer Bright admits he had an opportunity to observe Mr. Northrup walking down the street with his family and **did not observe any articulable facts indicating reasonable suspicion that Mr. Northrup had committed or was about to commit a crime justifying a stop** (Bright Depo., RE 26, PageID# 194, LL 9-24, emphasis added). Moreover, he would not have stopped or questioned Mr. Northrup because he understood that "open carry" is permissible in Ohio, and understood that without reasonable suspicion or probable cause, he had no authority to stop, detain, question, or conduct an investigation of criminal activity (Bright Depo., RE 26,

8

PageID# 183, LL 12-16, PageID# 184, LL 2-4 and LL 22-25, PageID# 186, LL 2-4).

In spite of what Officer Bright observed and his understanding of the law, he approached the Northrup family and asked Mr. Northrup to identify himself, which Mr. Northrup did verbally by stating his name and address. As the police officer walked closer, he had his hand on his firearm and he told Mr. Northrup that he was going to remove his firearm from its holster, and if Mr. Northrup went for his firearm he was going to shoot him (Northrup Depo., RE 28, PageID# 391, LL 10-15 and Affidavit of Denise Northrup, RE 38-3, PageID# 523, ¶ 9). Officer Bright directed Mr. Northrup to hand the dog leash to his wife, turn around and put his hands up (Northrup Depo., RE 28, PageID# 391, LL 15-21 and Affidavit of Denise Northrup, RE 38-3, PageID# 523, ¶ 9). Mr. Northrup assured the police officer verbally that he would not be touching his firearm (Affidavit of Denise Northrup, RE 38-3, PageID# 523, ¶ 9). Officer Bright removed Mr. Northrup's firearm from its holster (Northrup Depo., RE 28, PageID# 367, LL 3-11).

Officer Bright asked Mr. Northrup if he had his driver's license and asked to see it (Northrup Depo., RE 28, PageID# 392, LL 1-4). Mr. Northrup asked permission to get out his wallet and gave Officer Bright his driver's license (Northrup Depo., RE 28, PageID# 392, LL 3-10 and Affidavit of Denise Northrup, RE 38-3, PageID# 523-524, ¶ 10). Officer Bright only had to ask once for Mr.

Northrup to give his driver's license (Northrup Depo., RE 28, PageID# 392, LL 9-11 and Affidavit of Denise Northrup, RE 38-3, PageID# 523-524, ¶ 10).

While Mr. Northrup was getting his license, Mrs. Northrup asked what was going on and Officer Bright would only say they had received a call (Affidavit of Denise Northrup, RE 38-3, PageID# 523, ¶ 12). Mr. Northrup asked what was going on and Officer Bright stated "he was conducting an investigation and he would let him know as soon as he figured things out" (Northrup Depo., RE 28, PageID# 393, LL 9-10 and LL 18-20).

Officer Bright asked Mr. Northrup if he had a concealed carry permit, to which Mr. Northrup asked if he was "under arrest, am I free to go" (Northrup Depo., RE 28, PageID# 393, LL 18-21). Officer Bright did not answer and kept asking questions in a forceful and aggressive manner inquiring whether Mr. Northrup had a concealed carry license (Northrup Depo., RE 28, PageID# 393, LL 22-25). Officer Bright turned to Mrs. Northrup and asked her if Mr. Northrup had a concealed carry permit. She responded by stating that Officer Bright had her husband's driver's license and "you can check for yourself" (Northrup Depo., RE 28, PageID# 394, LL 3-7 and Affidavit of Denise Northrup, RE 38-3, PageID# 525, ¶ 22).

At this point, Officer Bright told Mr. Northrup that he could arrest him for inducing panic right now (Northrup Depo., RE 28, PageID# 394, LL 8-11). Mr.

Northrup responded by stating he had "nothing further to say, am I free to go" (Northrup Depo., RE 28, PageID# 394, LL 10-11). Officer Bright turned to Mrs. Northrup and stated, "I'll take him to jail, he'll spend the night in jail tonight. Do you want your husband to go to jail?" (Northrup Depo., RE 28, PageID# 394, LL 11-15) Officer Bright turned back to Mr. Northrup and told him he would take him to jail, saying, "I will arrest you for inducing panic." Mr. Northrup responded by asking if he was, "free to go." Officer Bright said, "Ok, you are under arrest, turn around, put your hands behind your back" (Northrup Depo., RE 28, PageID# 394, LL 16-25). Officer Bright admitted to arresting Mr. Northrup for inducing panic (Bright Depo., RE 26, PageID# 208, LL9-5, PageID# 219, LL 14-21, PageID# 220, LL 1-2 and PageID# 225, LL 10-12).

Officer Bright proceeded to handcuff Mr. Northrup very tightly and Mr. Northrup asked for the handcuffs to be loosened. Officer Bright did something to the handcuffs, as he stated that he loosened them, but Mr. Northrup again told him they were still too tight (Northrup Depo., RE 28, PageID# 395, LL 1-4). Mr. Northrup was placed in the back of the police cruiser (Northrup Depo., RE 28, PageID# 395, LL 11-17). A second police car (Sergeant Ray) then pulled up to the scene.

After Mr. Northrup was put in the back seat of the police cruiser, Officer Bright proceeded to question Mrs. Northrup in a combative and intimidating

manner in front of the children (Affidavit of Denise Northrup, RE 38-3, PageID# 525, ¶ 19). Officer Bright said Mr. Northrup was "being a jerk" and stated that if Mr. Northrup had just shown his concealed carry license, this whole situation would have been over in 30 seconds (Affidavit of Denise Northrup, RE 38-3, PageID# 525, ¶ 19).

Officer Bright and Sergeant Ray talked, referred to a notebook and had an extended conversation with the Detectives regarding how to charge Mr. Northrup. Mr. Northrup was confined to the back seat of the police cruiser, handcuffed for 30 to 40 minutes (Northrup Depo., RE 28, PageID# 397, LL 24-25). Eventually, Mr. Northrup was issued a citation for failure to disclose personal information, R.C. § 2921.29(A)(1) because he refused to tell Officer Bright whether he had a concealed carry license (Audio DVD, RE 41, Exhibit F at 1:45, Shawn Northrup's audio recording). This citation was not applicable to the situation and the Police Officers falsely charged Mr. Northrup, knowing that he had fully complied with the officer's questions. There was absolutely no legal or factual basis to charge Mr. Northrup. The charges against Mr. Northrup were false when made and constituted an unlawful sham proceeding.

After retaining an attorney and appearing in Court multiple times, the charges were summarily dismissed by the prosecutor when he learned that Mr.

Northrup had provided his driver's license (Court Docket, RE 38-1, PageID# 515-516).

Since Officer Bright arrested Mr. Northrup, he has not openly carried a firearm (Northrup Depo., RE 28, PageID# 402, LL 3-13).

## VII. SUMMARY OF THE ARGUMENT

The District Court held Shawn Northrup, and Officer Bright and Sergeant Ray, disputed material facts precluding summary judgment. For this Court to have appellate jurisdiction to review the interlocutory appeal on Officer Bright's and Sergeant Ray's claim of qualified or governmental immunity they are required to accept Northrup's version of the facts. The Officers have not accepted the facts as asserted by Mr. Northrup arguing the arrest was lawful because he made "furtive movements," justifying the disarming and handcuffing, consequently, this Court lacks jurisdiction over their interlocutory appeal.

Shawn Northrup asserted that the Officers acted with malicious purpose, in bad faith or in a wanton and reckless manner because they lacked probable cause and the arrest was not based upon a particularized and objective reason for suspecting Mr. Northrup of criminal activity. Officer Bright and Sergeant Ray are attempting to cover-up their unlawful conduct by falsely charging Shawn Northup with criminal activity. Mr. Northrup was engaged in lawful conduct and had not committed any crime and was not about to commit any crime. When the officer

stopped and questioned Mr. Northrup, the officer did not have any articulable facts indicating reasonable suspicion that a crime had been committed or was about to be committed by Mr. Northrup. Officer Bright detained him, searched him, threatened him, arrested him, and after figuring out that he was engaged in lawful conduct, falsely charged Mr. Northrup.

The officers involved engaged in wrongful conduct, violated Mr. Northrup's clearly established Fourth Amendment Right to be free from unconstitutional searches and seizures, and intentionally and maliciously trumped up facts and charges they knew were false overcoming any claim of statutory or governmental immunity by Officer Bright and Sergeant Ray. Their actions were intentional, willful, wanton and malicious, and constituted a sham legal process entitling Mr. Northrup to punitive damages.

## VIII. <u>ARGUMENT</u>

### 1. THIS COURT LACKS JURISDICTION TO REVIEW DENIAL OF QUALIFIED IMMUNITY THAT TURNS ON EVIDENTIARY ISSUES.

A denial of qualified immunity on purely legal grounds is immediately appealable. *Mitchell v. Forsyth,* 472 U.S. 511, 530 (1985). "Thus, to bring an interlocutory appeal of a qualified immunity ruling, the defendant must be willing to concede the plaintiff's versions of the facts for purposes of appeal." *Jefferson v. Lewis,* 594 F.3d 454, 459 (6th Cir. 2010). The Appellants dispute material facts

precluding this Court from exercising its interlocutory appellate jurisdiction and it should be dismissed.

A cursory review of the facts as stated by Northrup materially conflict with the facts presented by the Officers. Northrup testified that while he was walking with his wife, daughter, grandson and a dog, openly carrying a holstered firearm in full compliance with all state and federal laws his daughter told him a police car was pulling up behind him (Northrup, RE 28, PageID# 365, LL 14-25, PageID# 366, LL 20-25, PageID# 390, LL 3-6). Mr. Northup pulled out his cell phone and started recording, causing him to have his cell phone in his left hand and the dog leash in his right hand (Northrup Depo., RE 28, PageID#390, LL 16-22 and PageID#391, LL 5-9).

He was approached by Officer Bright and asked to identify himself which Mr. Northrup did by verbally giving his name and address. As Officer Bright walked closer, he had his hand on his firearm and told Mr. Northrup that he was going to remove his firearm from its holster and if Mr. Northrup went for his firearm he was going to shoot him (Northrup Depo., RE 28, PageID#391, LL 10-15 and Affidavit of Denise Northrup, RE 38-3, PageID# 523, ¶9). Mr. Northrup assured the police officer verbally that he would not be touching his firearm (Affidavit of Denise Northrup, RE 38-3, PageID# 523, ¶ 9). Officer Bright

removed Mr. Northrup's firearm from its holster (Northrup Depo., RE 28, PageID# 367, LL 3-11).

Officer Bright asked Mr. Northrup if he had his driver's license and asked to see it (Northrup Depo., RE 28, PageID# 392, LL 1-4). Officer Bright only had to ask once for Mr. Northrup to give his driver's license (Northrup Depo., RE 28, PageID# 392, LL 9-11 and Affidavit of Denise Northrup, RE 38-3, PageID# 523-524, ¶ 10).

While Mr. Northrup was getting his license, Mrs. Northrup asked what was going on and Officer Bright would only say they had received a call (Affidavit of Denise Northrup, RE 38-3, PageID# 523, ¶ 12). Mr. Northrup asked what was going on and Officer Bright stated "he was conducting an investigation and he would let him know as soon as he figured things out" (Northrup Depo., RE 28, PageID# 393, LL 9-10 and LL 18-20).

Officer Bright asked Mr. Northrup if he had a concealed carry permit, to which Mr. Northrup asked if he was "under arrest, am I free to go" (Northrup Depo., RE 28, PageID# 393, LL 18-21). Officer Bright did not answer and kept asking questions in a forceful and aggressive manner inquiring whether Mr. Northrup had a concealed carry license (Northrup Depo., RE 28, PageID# 393, LL 22-25). It was Mr. Northrup's contention that he was "seized" for Fourth Amendment analysis when he was disarmed and questioned without probable

cause or any reasonable suspicion any crime had been committed or was about to be committed and he was not free to go.

Officer Bright articulates a significantly different set of facts arguing that Mr. Northrup was uncooperative and non-responsive. Officer Bright asserts that Mr. Northrup refused to obey his direction in handing his cell phone to his wife, and only after several orders directing him to hand over the cell phone did he do so (Appellants' Brief, Doc. 20, page 11). Officer Bright then asserts after observing what he believed to be "furtive movements" made by Mr. Northrup towards his firearm did he order him to turn around to disarm him (Appellants' Brief, Doc. 20, page 11; Bright Depo., RE 26, PageID# 212, LL 5-8). Officer Bright testified "that I ordered him several times to hand the cell phone to his wife, and approximately the third time he complied. Ordered him to raise his hands away from his weapon approximately three times, and approximately the third time he raised his hands. And I ordered him to turn around, which he took several attempts or commands to turn around, and he finally turned around. And then at that point I walked up from behind and unsnapped his gun and took his gun out of his holster" (Bright Depo., RE 26, PageID# 213, LL 16-25). When Officer Bright unsnapped and took Mr. Northrup's firearm, his hands were in the air (Bright Depo., RE 26, PageID# 214, LL 1-3). Officer Bright also argues that it took three requests before Mr. Northrup provided his driver's license (Bright Depo., RE 26, PageID#206, LL 25 and

17

PageID# 207, LL 1-2). After Officer Bright asked Mr. Northrup about his concealed carry license and when he refused to answer any more questions, Officer Bright testified "I had inducing panic at the time, I ordered him to put his hands behind his back, and proceeded to handcuff him (Bright Depo., RE 26, PageID# 208, LL 10-12). He then escorted him to the police car and put him in the back of the patrol car (Bright Depo., RE 26, PageID# 208, LL 14-15). Significantly, throughout their Brief, Appellants frame placing Mr. Northrup in the rear of a police car handcuffed as a "brief detention" not an arrest (Appellants' Brief, Doc. 20, pages 10, 17, 27, and 28).

However, Officer Bright said, "Ok, you are under arrest, turn around, put your hands behind your back" (Northrup Depo., RE 28, PageID# 394, LL 16-25). Officer Bright admitted to arresting Mr. Northrup for inducing panic (Bright Depo., RE 26, PageID# 208, LL 9-5, PageID# 219, LL 14-21, PageID# 220, LL 1-2 and PageID# 225, LL 10-12).

The District Court determined:

> the defendants [could] not offer any evidence to support their argument that, by the fact of a 911 call and subsequent dispatch, Officer Bright had a reasonable suspicion that Northrup had committed a crime, was committing a crime, or was about to commit a crime. It is the jury's role to determine whether Northrup or Officer Bright offer the more believable account of their encounter. The Defendants are not entitled to summary judgment on Northrup's Fourth Amendment claims because there is a genuine dispute of material fact as to whether this incident violated Northrup's clearly established right to be free from unconstitutional searches and

seizures. Additionally, the Defendants are not entitled to summary judgment on Northrup's excessive force claim, as the permissibility of the use of handcuffs, at least in part, may rise or fall on the constitutionality of the seizure."

(Memorandum Opinion and Order, RE 45, PageID# 597).

Similarly, the District Court determined that:

the Defendants were not entitled to summary judgment on the State Law claims for assault, battery, false arrest, and malicious prosecution under Ohio law as a result of the dispute of material fact as to whether the Defendants had a reasonable suspicion to support a *Terry* stop or probable cause to support an arrest. If a jury concluded the Defendants lacked a reasonable suspicion or probable cause, they may draw the inference that the Defendants' actions were motivated by malice.

(Memorandum Opinion and Order, RE 45, PageID#599).

A denial of qualified immunity that turns on evidentiary issues is not immediately appealable. The Appellants have not accepted the facts as stated by Mr. Northrup precluding an interlocutory appeal. This Court lacks jurisdiction.

### 2. OFFICER BRIGHT AND SERGEANT RAY DID NOT HAVE SPECIFIC AND ARTICULABLE SUSPICION THAT SHAWN NORTHRUP WAS ENGAGED IN ANY WRONGDOING OR CRIMINAL ACTIVITY TO JUSTIFY A *TERRY V. OHIO* STOP.

The standard regarding the authority of a police officer to detain a person for purposes of investigation is set forth in Supreme Court decisions. In *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) the Court held:

[d]etaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity . . . . the evidence collected must be weighed as understood by those versed in the field of law enforcement . . . [a]lso, the process must raise suspicion that the particular individual being stopped is engaged in wrongdoing." *Id.* at 411-12.

In *Terry v. Ohio* 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880 (U.S.Ohio 1968) the Court stated:

And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . [a]nd in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? . . . [a]nything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction.

Reviewing the specific, articulable facts of which Defendants were aware at the time Officer Bright stopped Mr. Northrup reveals:

Officer Bright received a dispatch call stating "an anonymous caller, white male, walking his dog on Rochelle, carrying a handgun" (Audio Recording of Dispatch to Responding Officers, RE 41; Police Report, RE 38-2, PageID# 517-521; Bright Depo., RE 26, PageID# 192, LL 1-15, PageID# 193, LL 1-8 and LL 15-25, and PageID# 194, LL 1-6). The caller did not identify himself at that time, (Audio Recording of Alan Rose's Call to 911, RE 41, Exhibit D) but instead

remained anonymous, until after Mr. Northrup had been handcuffed and placed in Officer Bright's patrol car.

Officer Bright observed Mr. Northrup walking on Hayes Street with his wife, two children, and a dog and observed that Mr. Northrup was wearing a pistol on his hip in a holster (Bright Depo., RE 26, PageID# 194, LL 9-24).

The above statement of facts encompasses the totality of the specific and articulable facts of which Officer Bright was aware at the time he approached, with his hand on his firearm, and stopped Mr. Northrup (Bright Depo,. RE26, PageID# 204, LL 13-14). No other facts were asserted at the time Officer Bright stopped Mr. Northrup. The stop of Shawn Northrup was without reasonable suspicion. "An anonymous tip that a person is carrying a gun is not, without more, sufficient to justify a police officer's stop and frisk of that person." *Florida v. J.L.,* 529 U.S. 266, 266, 120 S.Ct. 1375, 1377 (2000). An anonymous tip must be reliable in its assertion of illegality, not just in its tendency to identify a determinate person" if it is to provide reasonable suspension for a Terry investigatory stop. *Id.* 266. Officer Bright testified he based his stop of Mr. Northrup on the 911 call (which did not suggest any crime had been committed), and not on any facts he observed (Bright Depo., RE 26, PageID# 199, LL 4-25 and pg. 44, LL 9-12).

Contrast the facts noted above to the *Cortez* standard noted below:

[d]etaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity . . . . the

21

evidence collected must be weighed as understood by those versed in the field of law enforcement . . . [a]lso, the process must raise suspicion that the particular individual being stopped is engaged in wrongdoing.

The limited facts noted above do not support a reasonable, articulable suspicion of criminal activity. Thus the stop itself, even under the fairly liberal standard allowed to law enforcement under *Terry* and *Cortez*, was an infringement on Mr. Northrup's Fourth Amendment right to be free from unreasonable searches and seizures.

Officer Bright's incident report, a report he corroborated as his best recollection of the facts and truthful to the best of his recollection (Bright Depo., RE 26, PageID# 177, LL 8-15 and Police Report, RE 38-2, PageID# 517-521), offered an alternative explanation why he stopped Mr. Northrup; he stopped Mr. Northrup to conduct an investigation as to whether Mr. Northrup was legally carrying a firearm (Bright Depo., RE 26, PageID# 238, LL 10-13 and Police Report, RE 38-2, PageID# 517-521), to see if he was precluded from carrying a firearm (Bright Depo., RE 26, PageID# 239, LL 15-24). Yet nowhere in Officer Bright's deposition testimony, the written police report, or in the Appellants' brief is there provided any factual basis for the officer to have suspected that Mr. Northrup was in violation of any requirement or regulation which would have precluded him from openly carrying a firearm on a public sidewalk. (Compare stopping an automobile, without any basis for suspicion, for no purpose other than

to ascertain if the driver has a license, or is in lawful possession of the car. *See*

*Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 1401 (U.S.Del.,1979)):

> Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

*Id.* at 663.

Moreover, the argument presented by Officers Bright and Sergeant Ray asserting they could stop and question Shawn Northrup to determine if he was precluded by statute because he openly and lawfully carried a holstered firearm in full compliance with Federal and Ohio law was rejected in case of *United States v. Nathaniel Black,* 707 F.3d 531(4th Cir.). The Fourth Circuit stated that "being a felon in possession of a firearm is not a default status. More importantly, where a state permits individuals to openly carry firearms, the exercise of this right, without more, cannot justify an investigatory detention. Permitting such a justification would eviscerate Fourth Amendment protections for lawfully armed individuals in those states. *Id.* at 540, citing, *United States v. King*, 990 F.2d 1552, 1559 (10th Cir. 1993).

In summary, Defendants did not provide any evidence for concluding that the stop of Mr. Northrup was based upon reasonable, articulable suspicion of

criminal activity or any particularized and objective reason for suspecting Mr.

Northrup of criminal activity. The District Court correctly determined that Officer

Bright and Sergeant Ray did not have any basis to conduct a *Terry* stop and detain,

question and arrest Mr. Northrup. In so holding, the District Court correctly

concluded it was the jury's role to determine "whether Northrup or Officer Bright

offer the more believable account of their encounter" (Memorandum Opinion and

Order, RE 45, PageID# 597).

### 3. OFFICER BRIGHT AND SERGEANT RAY DID NOT HAVE PROBABLE CAUSE TO STOP, QUESTION AND/OR ARREST SHAWN NORTHRUP.

The arrest subsequent to the stop of Mr. Northrup constituted a more serious

infringement, judged under the more stringent standard of probable cause.

In *Maryland v. Pringle*, 540 U.S. 366, 124 S.Ct. 795, 800 (U.S.Md., 2003)

the Supreme Court stated:

> [t]o determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause, (citing to *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911.(1996)).

*Id.* at 371.

> Probable cause denotes 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir.1999) (citations omitted). The officer's belief of criminal activity must be supported by something

more than mere suspicion, though less than prima facie proof. *United States v. Harris*, 255 F.3d 288, 292 (6th Cir.2001) (citation omitted).

*Shevlin v. Cheatham*, 211 F.Supp.2d 963, 968 (S.D.Ohio, 2002).

Mr. Northrup was seized, i.e. arrested, at the point when Officer Bright approached with his hand on his firearm, threatening to shoot him and certainly when, in that posture, he began to give orders to Mr. Northrup to raise his hands, the subsequent events in which Officer Bright handcuffed Mr. Northrup and placed him in the rear seat of the patrol car (Bright Depo., RE 26, PageID# 208, LL 9-15) definitely constituted an arrest. Arrest is defined as occurring when the following four requisite elements are present: (1) an intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested. *State v. Darrah*, 64 Ohio St.2d 22, 26, 412 N.E.2d 1328, 1330 - 1331 (Ohio, 1980). The intent to arrest was confirmed by Officer Bright, stating, that he arrested Mr. Northrup for inducing panic (Bright Depo., RE 26, PageID# 219, LL 14-21, PageID# 220, LL 1-2, and PageID# 225, LL 10-12).

The officer questioned Mr. Northrup about the incident prompting the 911 call and was told there had been a verbal exchange with the person who called the police, and that the discussion included the open carrying of a firearm (Northrup Depo., RE 28, PageID# 386, LL 16-19 and LL 20-23, and PageID# 387, LL 1-11). Appellants admit Officer Bright did not have knowledge of the specific dialogue

25

between Northrup and Alan Rose (Appellants' Brief, Doc. 20, page 23). Officer Bright received a dispatch call stating "an anonymous caller, white male, walking his dog on Rochelle, carrying a handgun" (Audio DVD, RE 41, Exhibit E, Recording of Toledo Dispatch to Officers; Police Report, RE 38-2, PageID# 517-521; Bright Depo., RE 26, PageID# 192, LL 1-15, PageID# 193, LL 1-8 and LL 15-25, and PageID# 194, LL 1-6). The caller did not identify himself at that time, (Audio DVD, RE 41, Exhibit D, Recording of Alan Rose's Call to 911 Operator) but instead remained anonymous, until after Mr. Northrup had been handcuffed and placed in Officer Bright's patrol car.

Officer Bright stated that he arrested Mr. Northrup for inducing panic (Bright Depo., RE 26, PageID# 219, LL 14-21, PageID# 220, LL 1-2, PageID# 225, LL 10-12). Nowhere, however, do the Defendants cite facts that demonstrate any specific knowledge or observation of any action of Mr. Northrup's, or even hearing of an allegation made by others of any specific action which could be determined to be an element of the crime of inducing panic.

The crime of inducing panic is described in R.C. § 2917.31 as follows:

> (A) No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by doing any of the following:
> (1) Initiating or circulating a report or warning of an alleged or impending fire, explosion, crime, or other catastrophe, knowing that such report or warning is false;
> (2) Threatening to commit any offense of violence;

26

> (3) Committing any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm.

In contrast to the actions that would constitute conduct prohibited by the statute, the facts, as described by the Officer Bright at the time of the arrest, assert no more than an anonymous caller reported that "a man walking a dog on Rochelle Rd. was carrying a hand gun out in the open" (Audio DVD, RE 41, Exhibit E, Recording of Dispatch to Officers; Police Report, RE 38-2, PageID# 517-521; Bright Depo., RE 26, PageID# 192, LL 1-15, PageID# 193, LL 1-8 and LL 15-25, and PageID# 194, LL 1-6), that Officer Bright was dispatched with no more information than an anonymous caller had observed Mr. Northrup walking with his family, openly and legally carrying a firearm, and that Mr. Northrup, in the officer's version of their conversation, described an argument over the open carrying of a firearm.

The issue to be resolved is: do those facts meet the test noted above, that they would warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit the offense of inducing panic? The conclusion must be no. The standard for probable cause requires that the officer's belief of criminal activity must be supported by something more than mere suspicion. In this case, with no fact observed or alleged that could be an element of the crime for which Mr.

Northrup was arrested; it was nothing more than mere suspicion, speculation in fact as to what may have occurred during the verbal exchange that was the basis of the arrest. In the absence of the observation of any event or any allegation of an event that would constitute an element of the crime, it can only be concluded that there was no probable cause for the arrest and a Fourth Amendment violation had occurred.

According to Officer Bright, after consultation with Sergeant Ray and the Toledo Police Detective Bureau, the officers decided to charge Mr. Northrup with Failure to Disclose Personal Information, released Mr. Northrup, and issued him a citation for that violation (Bright Depo., RE 26, PageID# 221, LL 2-24).

The charge of Failure to Disclose Personal Information was entirely baseless as it has no application of Mr. Northrup's unwillingness to disclose whether he had a concealed carry license. Mr. Northrup had fully complied with R.C. § 2921.29. Division (C) of such section states "[n]othing in this section requires a person to answer questions beyond a person's name, address, or date of birth. . . .[n]othing in this section authorizes a law enforcement officer to arrest a person for not providing any information beyond the person's name, address, or date of birth or for refusing to describe the offense observed." Mr. Northrup had surrendered his driver's license to Officer Bright (Bright Depo., RE 26, PageID# 206, LL 22-25, PageID# 207, LL 1-2, 9-15, PageID# 244, LL 1-5). Providing his driver's license

supplied all the information the statue requires. As such, Mr. Northrup had not violated the statute and in the circumstances, no reasonable or prudent person could determine that probable cause justified arrest for violation of that statute.

Such actions by the arresting officer, with respect to the charges of inducing panic or failure to disclose personal information demonstrate that the arrest of Mr. Northrup was without probable cause and a violation of Mr. Northrup's Fourth Amendment Rights protecting him from unreasonable search and seizure.

Although Officer Bright and Sergeant Ray, by their own arguments and testimony, have not presented any facts sufficient to justify the detention or arrest of Mr. Northrup, the facts asserted by Mr. Northrup in his deposition and in the affidavit of Denise Northrup further support the conclusion that Mr. Northrup was stopped without reasonable suspicion and arrested without probable cause. The District Court held that these material questions of fact remained to be determined, making summary judgment inappropriate on qualified immunity.

### 4. THE SCOPE AND DURATION OF A *TERRY* STOP IS IRRELAVENT WHEN AN INVESTIGATORY STOP IS UNJUSTIFIED AT ITS INCEPTION.

Officer Bright and Sergeant Ray stopped, questioned and arrested Shawn Northrup without probable cause or any reasonable, articulable suspicion of criminal activity (see discussion above). After realizing their mistake, they falsified charges against him to justify keeping him handcuffed and locked in the

back seat of a police car. The scope and duration of an unlawful investigatory stop violated the Fourth Amendment because Officer Bright and Sergeant Ray had not developed reasonable, articulable suspicion of criminal activity at any point. *U.S. v. Blair*, 524F.3d 740, 752 (6th Cir. 2008). The scope and duration in this case exacerbated the unlawful stop because it was not limited and lasted more than 30 minutes without any factual or legal support. The Officers spent most of the time figuring out how to trump up a criminal charge not justified under the circumstances.

### 5. OFFICER BRIGHT'S ACTION IN CONCERT WITH SERGEANT RAY IN ARRESTING MR. NORTHRUP VIOLATED CLEARLY ESTABLISHED FEDERAL AND STATE LAWS AND ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

In their Brief, Appellants assert placing Mr. Northrup in the rear of a police car handcuffed as a "brief detention" not an arrest (Appellants' Brief, Doc. 20, pages 10, 17, 27, and 28). However, the officers' actions, as described by Officer Bright constituted an arrest of Mr. Northrup (*see* discussion of arrest *supra*).

Defendants assert that they are entitled to qualified immunity. Qualified immunity has been described as:

> an affirmative defense that shields public officials performing discretionary functions from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A police officer may be entitled to qualified immunity for wrongful arrest even if his

probable cause determination is incorrect, however, if a reasonable police officer in his position could have believed that probable cause existed to arrest. *Avery v. King*, 110 F.3d 12 (6th Cir.1997).

*Dietrich v. Burrows* 976 F.Supp. 1099, 1103 (N.D.Ohio,1997)

The *Detrich* Court stated that the determination of whether qualified immunity should apply would require a court to "determine whether the defendant officers' probable cause determination was reasonable, even if wrong." *Id.*

In cases involving wrongful arrest, the *Detrich* court recognized that Federal courts have rarely found officers to be entitled to qualified immunity when they have made an arrest where probable cause was lacking, due to the closely analogous standards involving both concerns.

> This Court's research indicates that Federal Courts rarely find qualified immunity to be a valid defense to a false arrest in the absence of actual probable cause. To some extent, this may result from the closely analogous standards for true probable cause and a reasonable belief that probable cause exists. As a matter of logic, it is difficult to conceive of an instance in which the facts and circumstances within the officer's knowledge are sufficient to warrant a reasonable officer in believing that a prudent person, or one of reasonable caution, would believe, "in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense" (the qualified immunity standard), but in which a reasonably prudent person would not, in fact, believe that the suspect is committing an offense (the probable cause standard).

*Id.*

The *Detrich* court noted that in the relatively few cases where qualified immunity was found to apply in the absence of probable cause for the arrest of an

individual, there was in fact probable cause to believe an offense had taken place, but due to a reasonable error on the part of the law enforcement personnel, mistaken identity resulted in the arrest of an innocent person.

> The few reported cases in which an arresting officer has been protected by qualified immunity in the absence of actual probable cause have generally arisen where a factual error led to the arrest of an innocent person, and probable cause would have existed but for the factual error. See, e.g., *Pray v. City of Sandusky*, 49 F.3d 1154 (6th Cir.1995) (arresting officers entered wrong apartment); *Jeffers v. Heavrin*, 10 F.3d 380 (6th Cir.1993) (arresting officer erroneously thought allergy medication was contraband drug); *Atkins v. Lanning*, 556 F.2d 485 (10th Cir.1977) (facially valid warrant had name of wrong person on it).

*Id.* at 1104.

No such circumstances justifying the recognition of qualified immunity on the part of the Appellants apply in the case of the arrest of Mr. Northrup. As set forth *supra*, Appellants have not made a case that a prudent person, or one of reasonable caution, would believe in the circumstances shown, that Mr. Northrup had committed any offense, but rather, as noted *supra*, the determination to arrest Mr. Northrup is best described as based upon speculation about what might have happened or could have happened, without benefit of any facts, or even third party allegations of facts, that could lead one to believe any crime had been committed.

The events subsequent to Mr. Northrup's arrest which make it apparent that only after Officer Bright's discussion with Sergeant Ray and further discussion with the Toledo Police Detective Bureau, did Officer Bright issue Mr. Northrup a

citation for Failure to Disclose Personal Information, R.C. § 2921.29, not for inducing panic.

The charge of Failure to Disclose Personal Information was ungrounded. Mr. Northrup had fully complied with R.C. § 2921.29, *supra*. Mr. Northrup had surrendered his driver's license to Officer Bright (Bright Depo., RE 26, PageID# 206, LL 22-25, PageID# 207, LL 1-2, 9-15, PageID# 244, LL 1-5). Mr. Northrup's driver's license provided all the information the statue requires. As such, he had not violated the statute, and as was the case with respect to the charge of inducing panic, the groundless charge gave no justification for Mr. Northrup's arrest, and provides no defense to the claims that Officer Bright, in concert with Sergeant Ray and the Detective Bureau, violated clearly established statutory or constitutional rights of which a reasonable officer would be aware.

The Toledo Police officers involved in the incident knew that they had no power to arrest Mr. Northrup either under the charge of inducing panic or for failure to provide personal information. Thus, in this case the issue goes beyond probable cause or lack thereof. Under such circumstances, the defense of qualified immunity is not available to the Appellants.

> **6. THE FACTS ASSERTED BY NORTHRUP ESTABLISH THAT OFFICER BRIGHT AND SERGEANT RAY ARE NOT ENTITLED TO STATUTORY IMMUNITY UNDER R.C. § 2744.03 BECAUSE THEY ENGAGED IN MALICIOUS CONDUCT, IN BAD FAITH, IN A WANTON AND**

**RECKLESS MANNER BY INTENTIONALLY DETAINING, ARRESTING AND ASSERTING EXCESSIVE FORCE AND TRUMPING UP FALSE CHARGES TO JUSTIFY THEIR CONDUCT AND INTERFERING WITH NORTHUP'S CONSTITUTIONAL RIGHTS.**

Officer Bright and Sergeant Ray conspired to deprive Mr. Northrup of his constitutional right to be free from unreasonable searches and seizures under both the United States Constitution and Ohio Constitution (supra) by falsely charging him. After determining Mr. Northrup was at all times engaged in lawful conduct and after having arrested him without any lawful basis or probable cause, they conspired with the Toledo Police Detective Bureau to falsely charge him by asserting he failed to provide his personal identification.

In spite of knowing that Mr. Northrup had provided his personal information both verbally and by handing over his driver's license, Officer Bright and Sergeant Ray charged him with failing to provide his personal information pursuant to R.C. § 2921.29(A)(1). As mentioned supra, Officer Bright had no reasonable suspicion that Mr. Northrup was committing, had committed, or was about to commit a criminal offense justifying the officer's request for personal information. In spite of having no legal basis, Mr. Northrup voluntarily provided his driver's license. After Mr. Northrup refused to discuss his concealed carry license or provide any further information on whether he had a concealed carry license, Officer Bright arrested him for inducing panic.

Mr. Northrup also asserted a claim against Officer Bright and Sergeant Ray for vindictive enforcement. For this claim to succeed, he must establish: (1) the exercise of a protected right, (2) the officer's stake in deterrence of the exercise of that right, (3) the unreasonableness of the officer's conduct, and (4) that the enforcement was intended to punish the plaintiff for the exercise of the protected right. *Shevlin v. Cheatham,* 211 F.Supp2d 963, 971 (2002).

Mr. Northrup asserts that Officer Bright and Sergeant Ray acted with the intent to deprive him of his Fourth Amendment rights when he arrested him for inducing panic because he refused to discuss his concealed carry license. Officer Bright viewed Mr. Northrup engaging in lawful conduct but attempted to charge a law abiding person engaged in lawful activity of criminal conduct in a total disregard of any reasonable suspicion or probable cause. He charged him on the basis he wanted to explain the proper way Mr. Northrup should carry a firearm. Officer Bright wanted to know if Mr. Northrup had a concealed carry permit so he could instruct him that is how he should carry, "just cover it up ... with a shirt" (Bright Depo., RE 26, PageID# 207, LL 16-25 and PageID# 208, LL 1-2). When Mr. Northrup refused to answer his questions regarding his concealed carry license, he arrested him for inducing panic (supra). Officer Bright's insistence that Mr. Northrup should carry his firearm covered-up infringed on his Fourth Amendment Right because he was stopped on the pretext to "make sure he was

lawfully carrying." His actions were with malicious purpose, in bad faith, or in a wanton or reckless manner precluding Ohio Statutory Immunity. R.C. § 2744.03(A)(6)(b).

Moreover, Mr. Northrup also asserted that Officer Bright threatened him with deadly force committing an assault and followed up by committing a battery by arresting him, placing him in handcuffs in the back seat of his police cruiser without probable cause precluding summary judgment on the disputed material facts to be decided by the jury.

### 7. OFFICER BRIGHT VIOLATED NORTHRUP'S FOURTH AMENDMENT RIGHT OF EXCESSIVE FORCE WHEN HE HANDCUFFED HIM WITHOUT PROBABLE CAUSE AND IN AN UNDULY TIGHT MANNER.

In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Fettes v. Hendershot, et al.* 375 Fed. Appx. 528, 534 (2010), WL 1697727 (C.A. 6 (Ohio)). "The right to be free from "excessively forceful handcuffing" is a clearly established right for qualified immunity purposes, *Kostrzewa v. City of Troy,* 247 F.3d 633, 641 (6th Cir.2001), and applying handcuffs so tightly that the detainee's hands become numb and turn blue certainly

raises concerns of excessive force. Our precedents allow the plaintiff to get to a jury upon a showing that officers handcuffed the plaintiff excessively and unnecessarily tightly and ignored the plaintiff's pleas that the handcuffs were too tight. *See id.* ..." *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002).

The facts clearly establish that Officer Bright arrested and handcuffed Mr. Northrup without any lawful basis. Upon handcuffing him, Mr. Northrup asked for the handcuffs to be loosened. Officer Bright did something to the handcuffs, as he stated that he loosened them, but Mr. Northrup told him they were still too tight (Northrup Depo., RE 28, PageID# 395, LL 1-4). Officer Bright ignored Mr. Northrup request to loosen the handcuffs some more and was then placed in the back of the police cruiser (Northrup Depo., RE 28, PageID# 395, LL 11-17). The handcuff being placed on his wrists for more than thirty minutes caused ligature marks and caused his fingers to go numb along with a feeling of pins and needles (Northrup Depo., RE 28, PageID# 399, LL 19-25).

Moreover, Officer Bright acted with malice to injure Mr. Northrup when he intentionally handcuffed him too tight and by refusing to loosen them after Mr. Northrup complained they were too tight. He arrested him and intentionally applied the handcuffs too tight in retaliation to Northrup's refusal to answer any more questions and disclose whether he had a concealed carry license. After Mr. Northrup complained that the handcuffs were too tight, Officer Bright allegedly

loosened them but Northrup again complained they were still too tight. In total disregard for the pain and injury he was causing Northrup, Officer Bright ignored him and placed him in the back of the police cruiser.

## IX. **CONCLUSION**

For the reasons stated above, this Court does not have interlocutory appellate jurisdiction because the Appellants have not conceded to Northrup's version of the facts and a denial of qualified immunity that turns on the determination of evidentiary issues is not immediately appealable. This appeal should be dismissed for lack of jurisdiction.

If the Court determines, it has jurisdiction, it should deny qualified immunity to appellants and remand the matter to the District Court for a resolution of the materially disputed facts and adjudication of the merits.

For the above stated reasons, nothing in the arguments or evidence that the Appellants have presented to this Court justifies the detention and arrest of Mr. Northrup. Further, questions of material fact raised by the assertions of Northrup warrant this Court to deny the Appellants' motion for summary judgment on the basis of qualified and governmental immunity. The District Court's Judgment should be affirmed and this matter should be remanded for a determination on the merits.

Respectfully submitted,

/s/ Daniel T. Ellis
Daniel T. Ellis          (0038555)

Counsel for Plaintiff-Appellee

## X.    **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY, pursuant to Fed.R.App.P. 32(a)(7)(C), that this brief

complies with the type-volume limitations of Fed.R.App.P. 32(a)(7)(B), as

follows:

1.    Exclusive of exempted portions in Fed.R.App.P. 32(a)(7)(B)(iii), the brief contains 9,627 words.

2.    The brief has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

3.    If the Court so requests, the undersigned shall provide an electronic version of the brief and/or a copy of the work or line printout.

4.    The undersigned understands that a material misrepresentation in completing this certificate or circumvention of the type-volume limits in Fed.R.App.P. 32(a)(7), may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

Respectfully submitted,

/s/ Daniel T. Ellis
Daniel T. Ellis          (0038555)

LYDY & MOAN, Ltd.
4930 N. Holland-Sylvania Rd.
Sylvania, OH 43560
Telephone:  (419) 882-7100
Facsimile:  (419) 882-7201
Email:  dellis@lydymoan.com

Counsel for Plaintiff-Appellee

## XI.  CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Brief of Plaintiff-Appellees has been served upon the following parties via the Court's electronic filing system, this 20th day of February, 2015:

Adam W. Loukx, Director of Law (0062158)
John T. Madigan, Senior Attorney (0023614)
City of Toledo Department of Law
One Government Center, Suite 2250
Toledo, Ohio 43604
Telephone: (419) 245-1090
Fax: (419) 245-1090

Counsel for Defendants-Appellants


Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System.

By:   /s/ Daniel T. Ellis
      Daniel T. Ellis

CASE NO. 14-4050

*In the*

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

### SHAWN NORTHRUP,
**Plaintiff-Appellee,**

**vs.**

### CITY OF TOLEDO, POLICE DIVISION, *et al.,*
**Defendants-Appellants.**

On Appeal from the United States District Court
For the Northern District of Ohio
Western Division at Toledo
Judge Jeffrey J. Helmick
Case No. 3:12-CV-01544

---

## PLAINTIFF/APPELLEE SHAWN NORTHRUP'S ADDITIONAL
## DESIGNATION OF APPENDIX CONTENTS

---

Pursuant to Sixth Circuit Rule 30(b), Plaintiff- Appellee, Shawn Northrup,

hereby designates the following relevant Court documents from the District

Court's electronic record.

| DESCRIPTION OF ENTRY | RECORD ENTRY NO. | PAGE ID # |
|---|---|---|
| Court Docket | 38-1 | 515-516 |
| Police Report | 38-2 | 517-521 |
| Affidavit of Denise Northrup | 38-3 | 522-527 |
| Audio DVD, Exhibit D, E, and F | 41 | N/A |
| Motion to Alter/Amend Judgment filed by Plaintiff Shawn Northrup | 47 | 602-604 |
| Order of Status Conference held on 10/16/2014 | 48 | 605 |

Respectfully submitted,

/s/ Daniel T. Ellis

Daniel T. Ellis          (0038555)
*Lead Counsel*
LYDY & MOAN, Ltd.
4930 N. Holland-Sylvania Rd.
Sylvania, OH 43560
Telephone: (419) 882-7100
Facsimile: (419) 882-7201
Email: dellis@lydymoan.com

Counsel for Plaintiff-Appellee