IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SHAWN NORTHRUP
Plaintiff-Appellee

v.

CITY OF TOLEDO POLICE DIVISION, *et al.*
Defendant-Appellants

On Appeal from the United States District Court
For the Northern District of Ohio,
Western Division

REPLY BRIEF OF DEFENDANT-APPELLANTS
OFFICER DAVID BRIGHT AND SERGEANT DANIEL RAY

Adam W. Loukx, Director of Law
(0062158)
John T. Madigan, Senior Attorney
(0023614)
City of Toledo Department of Law
One Government Center, Suite 2250
Toledo, Ohio 43604
Telephone: (419) 245-1020
Fax: (419) 245-1090
john.madigan@toledo.oh.gov

*Counsel for Appellants*

# I. <u>**TABLE OF CONTENTS**</u>

I.  TABLE OF CONTENTS…………………………………………..  ii

II.  TABLE OF AUTHORITIES………………………………….  iii

III.  STATEMENT OF THE FACTS………………………….…  1

IV.  ARGUMENT……………………………………………...  5

     1.  DEFENDANT-APPELLANTS ARE ENTITLED TO
         APPEAL THE DISTRICT COURT'S DENIAL OF
         QUALIFIED IMMUNITY…………………………….  5

     2.  THE OFFICERS HAD REASONABLE SUSPICION TO
         STOP AND DETAIN THE PLAINTIFF TO CONDUCT
         AN INVESTIGATION UNDER  THE DOCTRINE
         ESTABLISHED BY *TERRY V. OHIO*…………………  8

     3.  THE PLAINTIFF HAS FAILED TO CARRY THE
         BURDEN OF DEFEATING THE OFFICERS'
         QUALIFIED IMMUNITY DEFENSE…………………..  11

     4.  SERGEANT DANIEL RAY TOOK NO PART IN THE
         DETENTION  OR HANDCUFFING OF THE PLAINTIFF
         AND SHOULD BE DISMISSED AS  A DEFENDANT….  15

V.  CONCLUSION………………………………..…………………..  16

VI.  CERTIFICATE OF COMPLIANCE……………………………..  17

VII.  CERTIFICATE OF SERVICE………………………………....  18

# II.  TABLE OF AUTHORITIES

## CASES

*Adams v. Williams.*, 407 U.S.1,88 S.Ct.1868,32 L.Ed.2d 612(1972)........... 8

*Alabama v. White*, 496 U.S.325, 110 S.Ct.2412,110 L.Ed.2d 30 (1990) ...... 9

*Champion v. Outlook Nashvile, Inc.*, 380 F.3d 893(6th Cir.2004).............. 7

*Cleveland v. State*, 185 Ohio App.3d 59, 923 N.E.2d 183 ( 8th Dist.2009) ... 15

*Cleveland v. State*, 128 Ohio St.3d 135, 2010-Ohio-6318...................... 15

*Gaines v. Craven*, 448 F.2d 1236 (9th Cir. 1971)............................... 8

*Harris v. City of Circleville*, 583 F.3[rd] 356 (6th Cir.2014)....................... 6

*Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)... 5

*Kirby v. Duva,* 530 F.3d 475 (6th Cir.2008)..................................... 5

*Livermore v. Lubelan,* 476 F.3d 397 (6th Cir.2007)........................... 5

*Meals v. City of Memphis,* 493 F.3d 720 (6th Cir.2007)....................... 6

*Norton v. Stille*, 526 Fed.Appx.509 (6th Cir.2013)............................. 7

*O'Malley v. City of Flint,* 652 F.3d 662 (6th Cir.2011)........................ 10, 11

*Rabin v. Flynn*, 725 F.3d 628 (7th Cir.2013)................................... 12

*Saucier v. Katz,* 533 U.S. 194, 121 S.Ct.2151, 150 L.Ed.2d 272 (2001)...... 12

*Terry v. Ohio*, 392 U.S.1, 88 S.Ct.1868, 20 L.Ed.2d 889 (1968).............. 7, 8

*Turner v. Scott*, 119 F.3d 425 (6th Cir.1997)................................... 16

*United States v. Adamson,*441 F.3d 513 (7th Cir.2006)......................... 13

*United States v. Cortez*, 449 U.S. 411, 101 S.Ct.690, 66 L.Ed.2d 345 (1981) ………………………………………………………....… 10

*United States v. Hurst,* 228 F.3d 751 (6th Cir.2000)……………..……… 11

*United States v. Richardson,* 385 F.3d 625 (6th Cir.2004)……...……….. 10

*United States v. Unverzagt*, 424 F.2d 396 (8th Cir. 1970)……………… 8

## **STATUTES**

28 U.S.C. § 1291 ……………………………………………………… 5
42 U.S.C. § 1983………………………………………:…………….. 17

Ohio Constitution Article XVIII, § 3………………………………….. 15

Ohio Revised Code § 9.68……………………………………………… 14, 15
Ohio Revised Code § 128.32 …………………………………………... 9
Ohio Revised Code § 128.99…………………………………………… 9
Ohio Revised Code § 2917.31 ………………………………………… 3, 11
Ohio Revised Code § 2921.29…………………………………………. 3, 11

Toledo Municipal Code § 549.18………………………………………. 14

# III. **STATEMENT OF THE FACTS**

Contrary to the Plaintiff-Appellee's brief, the salient facts in this case are not in dispute. At 5:10 P.M. on the afternoon of June 16, 2010, the City of Toledo Police Department received a 9-1-1 emergency telephone call from a caller who identified himself as Allen Rose. He reported that a white male walking his dog on Rochelle Road was carrying a hand gun out in the open. (Bright Depo. RE.26, Page ID#159-281, Exhibit "1"). The man walking on Rochelle Road was further described as 6'4" in height with a long ponytail and wearing tan pants. (Bright Depo, RE.26. Page ID#159-281, p.33). Officer David Bright was dispatched to the scene and began searching the area. At 5:22 P.M., he observed the Plaintiff who matched the description given walking on Hayes Street along with his wife, two children and a dog. As he drove closer, Officer Bright observed the Plaintiff wearing a semi-automatic pistol on his hip in a holster. (Bright Depo.RE.26,Page ID#159-281,p.37)(Northrup Depo, RE.28,Page ID#359-407, p.7). As Officer Bright approached he noticed that the Plaintiff was holding a dog leash. Officer Bright asked Mr. Northrup to hand the leash to his wife which he did. The Officer Bright ordered Mr. Northrup to hand over his cell phone to his wife which order the Plaintiff eventually obeyed after several requests. At this point, Northrup was standing at an angle to the officer, blocking

1

Bright's view of the Plaintiff's weapon. When Northrup made, in Officer Bright's opinion, a furtive movement with his hands, Bright ordered the Plaintiff to turn around so that he could disarm him. (Bright Depo.RE.26,Page ID#159-281,p.37) Finally, Officer Bright was able to secure the Plaintiff's weapon. At this point, the officer had not spoken with the original 9-1-1 caller so he proceeded to question Mr. Northrup regarding the incident. Mr. Northrup then began to explain to the officer that he had been in a verbal exchange with the person who called the police. This discussion included vulgarities and an argument over the open carrying of a firearm. While the Plaintiff attempts to minimize this encounter, he actually believed at the time it occurred that it would lead to a call to the police. (Northrup Depo.RE.28,Page ID#359-407,p.32). Officer Bright believed that this confrontation might have resulted in an offense of inducing panic. (Bright Depo.RE.26,Page ID#159-281,p.40). The officer next asked the Plaintiff for his drivers license to confirm his identification. Officer Bright then asked Mr. Northrup for his concealed weapon carry permit (CCW). The officer's purpose for making this request was to quickly confirm that the Plaintiff was not prohibited from possessing a firearm under Ohio Revised Code § 2923.13 (Having Weapons While Under A Disability) since a criminal background record check is required to obtain such a permit. When

the Plaintiff refused to answer any more of the officer's questions, Officer Bright placed handcuffs on Mr. Northrup and seated him in the rear of his patrol car. (Northrup Depo.RE.28,Page ID#359-407,p.36). The Plaintiff complained that the handcuffs were too tight and Officer Bright immediately loosened them (Bright Depo.RE.26,Page ID#159-281,p.51).

After the Plaintiff was handcuffed and placed in the rear of Officer Bright's car, Sergeant Daniel Ray, Officer Bright's supervisor, arrived on the scene at 5:26 P.M.. (Northrup Depo.RE.28,Page ID#359-407,pp.37-38) Officer Bright initially intended to charge the Plaintiff with the offense of Inducing Panic, Ohio Revised Code § 2917.31 but Sergeant Ray decided to contact the Toledo Police Detective Bureau to insure that the proper charge was filed. Sergeant Ray explained to Detective Phil Wauford everything that had occurred. Detective Wauford advised Sergeant Ray that Mr. Northrup should be charged with Failure to Disclose Personal Information, Ohio Revised Code § 2921.29, a misdemeanor of the fourth degree. Officer Bright then removed the handcuffs from the Plaintiff, returned his firearm to him and issued him a citation for Failure to Disclose Personal Information. The detention of Shawn Northrup lasted no more than forty minutes.(Northrup Depo.RE.28.Page ID#359-407,p.38).

Officer Donald Comes, the third Toledo Police officer named in the complaint, had no direct contact with the Plaintiff. His only involvement was to interview the 9-1-1 caller, Allen Rose, and report to Officer Bright what had occurred between Mr. Rose and the Plaintiff (Bright Depo.RE.26,Page ID#159-281,p.67). The criminal charge of Failure to Disclose Personal Information was subsequently dismissed at the request of Daniel Pilrose, an assistant City of Toledo prosecutor. (Bright Depo.,RE.26,Page ID#159-281,p.91)

Prior to the events of June 16, 2010, the Plaintiff had been involved in two previous confrontations with police officers over his practice of openly carrying a handgun wherever he went. In 2008 Shawn Northrup was arrested and charged with Carrying a Concealed Weapon in the Village of Ottawa Hills, Ohio. That charged was eventually reduced to Disorderly Conduct, a minor misdemeanor and the Plaintiff pled "no contest" to it.(Northrup Depo. RE.28,Page ID#359-407, p.12). Also in 2008, the Plaintiff was again wearing his handgun while pulling weeds in his front yard. Although a shirt covered the weapon, it was visible from the street. A Toledo Police officer asked Shawn Northrup for his concealed carry permit and removed his weapon. Northrup was grabbed, frisked and physically placed in the back of a police car while his personal information was

verified.(Northrup Depo.,RE.28,Page ID#559-407,pp.17-21). After those incidents, the Plaintiff began to carry his handgun on every walk through his neighborhood. (Northrup Depo.RE.28,Page ID#359-407, p.10). After June 16, 2010 he discontinued these armed strolls. (Northrup Depo.RE.28,Page ID#359-407, p.44)

## IV. ARGUMENT

### 1. DEFENDANT-APPELLANTS ARE ENTITLED TO APPEAL THE DISTRICT COURT'S DENIAL OF QUALIFIED IMMUNITY

This is an interlocutory appeal governed by Title 28 U.S.C. § 1291 limits appellate jurisdiction to "final decisions of the district courts." A district court's denial of qualified immunity is a final decision for purposes of § 1291 only to the extent that it turns on an issue of law. *Kirby v. Duva,* 530 F.3d 475, 480 (6th Cir.2008); *Livermore v. Lubelan,* 476 F.3d 397, 402 (6th Cir.2007). "Consequently, this court cannot hear an interlocutory appeal challenging 'a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial.' " *Kirby,* 530 F.3d at 480–81 (quoting *Johnson v. Jones,* 515 U.S. 304, 319–20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)). The Court, however, retains jurisdiction over the legal question of qualified immunity, *i.e.,* whether a given set of facts violates clearly established law. Id. To the

extent that Defendants make such arguments, there is jurisdiction over their interlocutory appeal. *Harris v. City of Circleville*, 583 F.3rd 356 (6th Cir.2014)

A defendant who files an interlocutory appeal after the denial of qualified immunity 'is required to limit [his] argument to questions of law premised on facts taken in the light most favorable to the plaintiff.' " Id. (quoting *Meals v. City of Memphis,* 493 F.3d 720, 726–27 (6th Cir.2007)). That the Defendants here "make the occasional factual argument" does not, however, destroy jurisdiction over the legal issues presented. Id. This court may simply ignore Defendants' attempts to dispute plaintiffs' version of the facts, obviating the need to dismiss the entire appeal for lack of jurisdiction. Id.

In the case sub judice there is no dispute as to the material facts. Those facts are:

1) A confrontation between the Plaintiff, who was openly carrying a handgun, and another person

2) A 9-1-1 call to the Toledo Police of a man carrying a gun in the street.

3) Officer Bright's observation of the Plaintiff carrying a gun.

4) Officer Bright's questioning of the Plaintiff

concerning his possession of a concealed

carry permit and Plaintiff's refusal to answer

that question.

5) Placing the Plaintiff in handcuffs

6) Release of the Plaintiff after forty minutes and the

issuance of an all purpose citation.

Officer Bright's statements concerning the speed at which the Plaintiff obeyed his commands to hand over his drivers license, raise his hands and turn around, while differing from those of the Plaintiff, do not create a *material* factual dispute. When no facts are in dispute, whether an official receives qualified immunity is a question of law. *Champion v. Outlook Nashvile, Inc.*, 380 F.3d 893(6th Cir.2004). This Court can ignore any attempt by the Defendants to dispute the version of the facts adopted by the district court and consider only the legal question of whether there was a violation of clearly established law. *Norton v. Stille*, 526 Fed.Appx.509, 512(6th Cir.2013). The facts, as set forth above, are what they are. The question for this Court is whether, as a matter of law, Officer Bright's reaction to what he observed and heard was reasonable. Simply stating, as the District Court did, that "a genuine dispute of material fact" exists (Memorandum Opinion and Order,RE 45,Page ID585-600, p.13) will not be

sufficient to deny the Defendants' ability to appeal on the question of qualified immunity. *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir.1997).

## 2. THE OFFICERS HAD REASONABLE SUSPICION TO STOP AND DETAIN THE PLAINTIFF TO CONDUCT AN INVESTIGATION UNDER THE DOCTRINE ESTABLISHED BY *TERRY V. OHIO*

The Defendants in this case had a reasonable articulable basis for stopping the plaintiff and investigating his conduct. Beginning with *Terry v. Ohio*, 392 U.S.1, 88 S.Ct.1868, 20 L.Ed.2d 889 (1968), the Supreme Court has repeatedly recognized the right of police officers to stop and question individuals based on less than a probable cause that a crime has been committed. In *Adams v. Williams*, 407 U.S. 143, 92 S.Ct.1921, 32 L.Ed.2d 612 (1972) the court held:

"In *Terry* this Court recognized that 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' Id., at 22, 88 S.Ct., at 1880. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. *146 See Id., at 23, 88 S.Ct., at 1881. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. see *Gaines v. Craven*, 448 F.2d 1236 (9th Cir. 1971); *United States v. Unverzagt*, 424 F.2d 396 (8th Cir.1970)". Id.at 145

The Plaintiff makes much of the fact that the 9-1-1 call by Allen Rose to the Toledo Police was initially made anonymously and that Officer Bright therefore lacked a reasonable articulable suspicion that a crime may have been committed. This argument ignores the fact that the officer was able to observe, before he spoke to the Plaintiff, that Northrup was carrying a firearm just as the 9-1-1 caller reported. When an anonymous tip can be suitably corroborated, a stop and frisk will be appropriate. This will provide "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Alabama v. White*, 496 U.S.325, 329,110 S.Ct. 2412,110 L.Ed.2d 301 (1990). Additionally, the telephone call from Allen Rose to the Toledo Police dispatcher was a 9-1-1 call. This emergency alert system, established by Ohio law, may only be used to obtain emergency service from a governmental agency. To report an emergency through the 9-1-1 system when no emergency exists is a criminal offense. R.C.§§ 128.32(F), 128.99. It was therefore, only logical for Officer Bright to conclude that an emergency of a criminal nature involving a gun had taken place on Rochelle Drive. When he arrived on the scene and observed a man carrying a handgun he could not, without neglecting his duty, fail to conduct an investigation. That investigation included, as required by due diligence, an inquiry as to the lawfulness of the Plaintiff's ability to posses a firearm

under Ohio law. The detention of the Plaintiff by Officer Bright did not become unreasonable simply because Shawn Northrup was not engaging in any illegal activity when the officer approached him. At that point, the officer did not have sufficient information available to him to simply walk away and have no further contact with the Plaintiff. In evaluating the reasonableness of an investigatory stop, courts examine whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio*, Id. at 20. A 9-1-1 call of a man with a gun and the actual observation of that man and his gun provides the reasonableness required.

The court views "the evidence in support of reasonable suspicion using a common sense approach, as understood by those in the field of law enforcement." *United States v. Richardson,* 385 F.3d 625, 630 (6th Cir.2004)). In finding reasonable suspicion, "the totality of the circumstances-the whole picture-must be taken into account." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Specifically, there are two factors that are considered: "(1) whether there was a proper basis for the stop, ... and, if there was a proper basis for the stop, (2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand." *O'Malley v. City of*

*Flint,* 652 F.3d 662, 670 (6th Cir.2011) (citations omitted). To support an officer's reasonable suspicion of criminal activity as a basis for an investigatory stop, he needs "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Hurst,* 228 F.3d 751, 757 (6th Cir.2000). Here, Officer Bright justifiably entertained a reasonable suspicion that: "A person...caused serious public...alarm (by)...threatening to commit an offense of violence" Inducing Panic, R.C.§ 2917.31(A)(2) based on the 9-1-1 emergency call and his own observations. After an investigation, which included an interview of the 9-1-1 caller, Officer Bright selected the charge of Failure to Disclose Personal Information, R.C.§ 2921.29. This decision was based on the officer's opinion that the Plaintiff failed to identify himself in a timely manner after three requests to do so. (Bright Depo.RE 26, Page ID #159-281,p.70). Whether or not this charge would have resulted in a conviction of the Plaintiff will never be known since the case was dismissed at the request of a City Prosecutor before a trial was ever commenced.

3. **THE PLAINTIFF HAS FAILED TO CARRY THE BURDEN OF DEFEATING THE OFFICERS' QUALIFIED IMMUNITY DEFENSE**

Defendants contend that they are entitled to qualified immunity and thus may not be held liable for damages under § 1983. Qualified immunity

shields government officials from civil liability when actions performed in their official capacity "[do] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity attaches unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The court employs a two-step inquiry in determining whether a government official is entitled to qualified immunity: (1) whether the official's conduct violated a constitutional right when considering the facts in a light most favorable to the injured party; and (2) whether the constitutional right was "clearly established." Id. at 201, 121 S.Ct. 2151. The determination of whether the right is "clearly established" must be made "in light of the specific context of the case, not as a broad general proposition." Id. To be clearly established at the time of the challenged conduct, the right's contours must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right," and "existing precedent must have placed the statutory or constitutional question beyond debate." *Rabin v. Flynn,* 725 F.3d 628 (7th Cir.2013).

The Plaintiff has failed to prove that a 36-40 minute detention of a person carrying a firearm on a street in a residential neighborhood was a violation of a clearly established constitutional right. Officer Bright had the duty and the responsibility to investigate the circumstances underlying the 9-1-1 emergency call. That investigation required him to determine whether or not a crime had been committed and whether or not the Plaintiff was under a legal disability to possess a firearm. While these determinations took time, it was not an inordinate amount of time and no more than was necessary to decide what offense, if any, to charge. Northrup does not show that the individual officers failed to diligently pursue a means of investigating that was likely to confirm or dispel quickly their suspicions that he was not involved in threatening violence or not authorized to carry a gun. *United States v. Adamson*, 441 F.3d 513 at 521(7th Cir.2006). A police officer could also have reasonably believed under clearly established law that handcuffs may be used after a *Terry v. Ohio* stop when a weapon is involved. *Rabin v. Flynn*, Id. at 634.

The Plaintiff has also failed to prove that the Defendants violated a constitutional right that was so reasonably clear that any public official would know that what he was doing would violate that right. In its Memorandum Opinion and Order (Order, RE 45, PageID#585-600,p.9) the

13

District Court found that the Defendants were entitled to qualified immunity on the Plaintiff's Second Amendment § 1983 claim. The Court reasoned that, at the time of this incident, no court had held that the Second Amendment's Right to Bear Arms was applicable to the states through the Fourteenth Amendment. The District Court went on to conclude, however, that as to the Plaintiff's Fourth Amendment unlawful search and seizure claims, "While Ohio law forbids individuals from carrying a concealed weapon without a license, there is no prohibition against the open carry of handguns". (Order, RE 45, Page ID #585-600, p.11). While that may be the District Court's and Officer Bright's understanding of the right to carry a firearm, the law in Ohio on this subject was far from settled on June 16, 2010. In 1970 the City of Toledo enacted Ordinance No. 443-70, Toledo Municipal Code § 549.18, a first degree misdemeanor, which made it unlawful to posses a firearm in the streets of the city. In an effort to preempt the enforcement of that law and similar ordinances in other Ohio cities, the Ohio General Assembly enacted R.C.§ 9.68 in 2007. This statute prohibited any restriction on the possession of firearms except those found in state or federal law. Before that law could take effect, the City of Cleveland filed a declaratory judgment action requesting that the statute be declared unconstitutional. The Cuyahoga County Common Pleas Court entered

summary judgment in favor of the State of Ohio. Cleveland appealed and on November 12, 2009 the Eight District Court of Appeals found that R.C.§ 9.68 unconstitutionally attempted to limit municipalities' police powers under Art.XVIII, Section 3 of the Ohio Constitution. *Cleveland v. State*, 185 Ohio App.3d 59, 923 N.E.2d 183 (8th Dist.2009). That decision was subsequently appealed to the Ohio Supreme Court where it was overturned on December 29, 2010. *Cleveland v. State*, 128 Ohio St.3d 135, 2010-Ohio-6318. On June 16, 2010, the date of the incident in the case *sub judice*, Toledo's ordinance making it unlawful to possess a firearm in a public street was therefore enforceable. While Officer Bright did not base his detention of the Plaintiff on that particular ordinance, the law in the State of Ohio was not so reasonably clear that a police officer in Toledo would know for certain that he could not arrest a person for openly carrying a firearm in a public street.

**4.      SERGEANT DANIEL RAY TOOK NO PART IN THE DETENTION OR HANDCUFFING OF THE PLAINTIFF AND SHOULD BE DISMISSED AS A DEFENDANT**

There is no dispute of the fact that Sergeant Daniel Ray did not arrive at the scene of this incident until Shawn Northrup was already seated in the rear of Officer Bright's cruiser.(Northrup Depo.RE 28, Page ID#359-407, p. 37). Sergeant Ray took no part in the initial questioning of the Plaintiff or in

the placing of handcuffs on Northrup. He had no knowledge, either from the Plaintiff or Officer Bright, that the handcuffs were on too tight. His only role was to assist Officer Bright in deciding what charge, if any, should be filed. This decision was made after the Sergeant sought advice from the Toledo Police detective bureau.(Ray Depo.,RE 29, Page ID# 408-455,p.23). In *Turner v. Scott*, <u>Id.</u> at 429, this court held that qualified immunity will be extended to an officer who was present when excessive force was allegedly committed by another officer only in those situations where, 1) the officer observed or had reason to know that excessive force would be or was being used, and 2) the officer had both the opportunity and the means to prevent the harm from occurring. Here, Sergeant Ray's involvement was limited to the decision to charge Northrup with Failure to Disclose Personal Information. The sergeant's decision to file that charge was hardly reckless since he first sought the advice of officers more experienced with that type of offense. The District Court erred in failing to extend qualified immunity protection to Sergeant Ray and to dismiss all of the Plaintiff's state law claims against the sergeant.

## V.   **CONCLUSION**

Based on the foregoing, Defendant-Appellants, Officer David Bright and Sergeant Daniel Ray, respectfully requests that this court reverse the District

Court's denial of the Defendants motion for summary judgment regarding the Plaintiff's Fourth Amendment claims under 42 U.S.C. § 1983 and his state law claims, and for any other and further relief which the Court deems they are entitled.

Respectfully submitted,

ADAM W. LOUKX, DIRECTOR OF LAW

/s/ John T. Madigan, Senior Attorney
John T. Madigan, Senior Attorney
(0023614)
City of Toledo Department of Law
One Government Center, Suite 2250
Toledo, Ohio 43604
Telephone: (419) 245-1020
Fax: (419) 245-1090
john.madigan@toledo.oh.gov

*Counsel for Appellants*

## X. **CERTIFICATE OF COMPLIANCE**

I hereby certify that the proof brief complies with the Federal Rule of Appellate Procedure 32(a)(7)(B) and that it contains only 17 pages and does not exceed the type volume limitation of Federal Rule of Appellate Procedure 32.

Respectfully submitted,

ADAM W. LOUKX, DIRECTOR OF LAW

/s/John T. Madigan
John T. Madigan, Senior Attorney
(0023614)
City of Toledo Department of Law
One Government Center, Suite 2250
Toledo, Ohio 43604
Telephone: (419) 245-1020
Fax: (419) 245-1090
*Counsel for Appellants*

## XI. CERTIFICATE OF SERVICE

I certify that on the 12th day of March, 2015, I electronically filed the foregoing document with the Clerk of Courts using the CM/ECF system to serve all counsel of record.

/s/ John T. Madigan, Senior Attorney